UNITED STATES COURT OF APPEALS

FOR THE FIRST CIRCUIT

_________________________

Nos. 92-2312

 92-2313

IN RE: TWO APPEALS ARISING OUT OF THE

SAN JUAN DUPONT PLAZA HOTEL FIRE LITIGATION.

_________________________

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Raymond L. Acosta, 
U.S. District Judge
]

_________________________

Before

Selya and Cyr, 
Circuit Judges
,

and Fuste,* 
District Judge
.

_________________________

Paul K. Connolly, Jr.
, with whom 
Damian R. LaPlaca
, 
, 
Ralph W. Dau
, 
Peter B. Ackerman
, 
Jeffrey W. Kilduff
, 
, 
Raul E. Gonzalez-Diaz
, 
A.J. Bennazar-Zequeira
, 
, 
Andrew K. Epting, Jr.
, 
G. Trenholm Walker
, 
, 
Homer L. Marlow
, 
William G. Liston
, 
, 
Deborah A. Pitts
, 
, 
Bethany K. Culp
, 
Patrick McCoy
, 
, 
Lon Harris
, 
, 
Stuart W. Axe
, 
, 
Adrian Mercado
, 
, 
Virgilio Mendez Cuesta
, 
Ernesto Rodriguez-Suris
, and 
 were on consolidated briefs, for appellants.

Gary L. Bostwick
, with whom 
R. Lance Belsome
 was on brief, for appellees Hotel Systems International, et al.

Alvaro Calderon
, with whom 
Will Kemp
 and 
Monita F. Sterling
, PSC Liaison, were on brief, for appellee Plaintiffs' Steering Committee.

_________________________

_________________________

_______________

*Of the District of Puerto Rico, sitting by designation.

SELYA, 
Circuit Judge
.
 These consolidated appeals require us to grapple for the first time with a looming problem in modern federal court practice: how, if at all, should expenses indigenous to a court's handling of mass disaster litigation be reallocated once the winners and losers have been judicially determined? Here, the appellants, late-joined defendants and defendants in cross-claim, prevailed in the underlying litigation. Nonetheless, the district court, coincident with the entry of judgment, effectively foreclosed them from either seeking costs under Fed. R. Civ. P. 54(d) or otherwise lobbying for reallocation of several hundreds of thousands of dollars in court-ordered expense assessments. Finding that the court's abrupt slamming of these doors was improvident, we vacate the relevant portion of the judgment and remand for further proceedings.

I. BACKGROUND

In 1987, the Judicial Panel on Multidistrict Litigation appointed the Honorable Raymond L. Acosta, a United States District Judge for the District of Puerto Rico, to handle some 270 cases arising out of the deadly fire that had earlier engulfed the San Juan Dupont Plaza Hotel. 
See
 
In re Fire Disaster at Dupont Plaza Hotel
, 660 F. Supp. 982 (J.P.M.L. 1987) (per curiam). Judge Acosta's stewardship proved "a model of judicial craftsmanship and practical ingenuity." 
In re Nineteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.
, 982 F.2d 603, 606 (1st Cir. 1992). Among the many successful innovations that brought the litigation to a celeritous conclusion were (1) the creation of a Joint Document Depository (JDD), which housed and copied for distribution all discovery materials, 
see
see
 
id.
see
 
In re Recticel Foam Corp.
, 859 F.2d 1000, 1001 (1st Cir. 1988) (describing operation of JDC). To fund these innovations, the district court entered a series of case-management orders which imposed mandatory assessments upon all litigants.
1:
Because the mechanics of the allocation process are not critical for present purposes, we supply merely a thumbnail sketch. The Plaintiffs' Steering Committee (PSC) and the defendant San Juan Dupont Plaza Hotel Corporation were assessed a total of $100,000 to defray the JDD's start-up costs. 
See
 Pretrial Order No. 127, at 69-70. Thereafter, each litigant paid for JDD-related services actually used. 
See
 
id.
 at 70. To cover costs that were not offset by service charges (
e.g.
, the JDD's overhead expenses), the district court imposed mandatory assessments. Initially, at least, the PSC bore 15% of the incremental cost and the defendants, collectively, bore 85%. 
See
 
id.
 at 71. Within the defense collective, per-member assessments were presumably equal.

 In this way, the court periodically requisitioned fresh monies as funds on hand were depleted. The orders were silent as to (i) whether or not the court planned to readjust defendants' contributions in light of future developments, and (ii) the court's authority, if any, to effectuate such reallocations.
2:
We add a small qualifier to this statement. Pretrial Order No. 127 is a document in excess of 200 pages dealing with a potpourri of matters. The portion of the order that discusses defendants' assessments does not address either of the two points mentioned in the text. However, in the portion of the document that addresses assessments imposed on plaintiffs' attorneys to fund the PSC and enable it to make its cost-sharing contributions, the district court provides for possible "reallocation of expenses based upon the actual, relative recovery" achieved by the various plaintiffs. 
Id.
 at 39. At the very end of the document, the district court states that "[t]his Order may be either amended or modified by the Court 
sua
 
sponte
 or upon good cause shown." 
Id.
 at 205. None of the parties argue that either of the provisions we have identified relate to the possible reallocation of cost-sharing assessments levied against appellants (or any defendants, for that matter). And, none of the other orders contain any language, general or specific, similar to that which we have quoted. 

see
 Pretrial Order No. 127, at 96-97, the pre-fire insurers' investigation of the newly emergent claims against them necessarily centered around a review of documents stored in the JDD.
3:
In one attempt to conduct some independent discovery, the pre-fire insurers moved to reopen discovery for ninety days. The docket sheet indicates that this motion was granted on March 19, 1991, albeit only for a three-day period.

The pre-fire insurers quickly filed dispositive motions. The district court, faced with more pressing problems, was slow in addressing the motions. Finally, the court granted them on September 11, 1992, 
see
 
In re San Juan Dupont Plaza Hotel Fire Litig.
, 802 F. Supp. 624 (D.P.R. 1992), 
aff'd
, 989 F.2d 36 (1st Cir. 1993), entered judgment in favor of the pre-fire insurers on all claims, and decreed that the parties would bear their own costs.

On appeal, seventeen pre-fire insurers complain that the district court abused its discretion by summarily precluding both an award of costs and a complete or partial refund of the cost-sharing assessments.
4: The fire victims, represented by the Plaintiffs' Steering Committee (PSC), and two cross-claimants, Hotel Systems International (HSI) and Dupont Plaza Associates (Associates), filed opposition briefs and participated in oral argument.

II. NATURE OF THE STAKES

In the expectation that describing the disputed expenditures in greater detail will help to put matters in the proper perspective, we travel that route.

A. 
Court-Ordered Assessments
.

The vast majority of appellants' outlays comprise mandatory payments imposed by six orders of the district court. 
See
supra
See
We fully understand appellants' submissiveness, inasmuch as refusal to pay would have resulted in sanctions, 
see
See
 
Recticel
, 859 F.2d at 1006.

Appellants' tribute helped to fund the various instrumentalities that Judge Acosta had set in place to expedite the litigation. Thus, out of each insurer's total contribution ($41,500), $18,000 went toward defraying the JDD's operating expenses, 
see
see
 
id.
The DLP was responsible for receiving, on behalf of all defendants, and disseminating, among all defense counsel, court orders and discovery materials. 
See
 Pretrial Order No. 127, at 62-63.

 
See
 
id.
See
 Pretrial Order No. 135, at 9. The idea was abandoned and the funds in question were eventually utilized for operational costs of the JDD and DLP. 
See
 
In re San Juan Dupont Plaza Hotel Fire Litig.
, 142 F.R.D. 41, 46 n.20 (D.P.R. 1992).
 Therefore, the figures recited above, insofar as they pertain to the JDD and DLP, are minimum estimates.

B. 
Ordinary Costs
.

Presumably, the payments made pursuant to the cost-sharing orders, though substantial, do not comprise the whole of appellants' investment in this sprawling litigation. Their successful defense doubtless required other, more commonplace expenditures, such as photocopy costs of the type and kind routinely associated with litigation. 
See
, 
e.g.
III. WAIVER

Having described the expenses appellants seek to recoup, we pause to address a threshold matter. The plaintiffs submit that the pre-fire insurers waived any claim for expense recovery by failing to file bills of costs after judgment entered. 
See
 
id.
 (requiring bill of costs to be filed). We demur: the doctrine of waiver presents no barrier to appellants' attempt to recover court costs or request a reallocation of the mandatory cost-sharing assessments. 

To be sure, the failure seasonably to file a bill of costs with the district court may, in certain circumstances, constitute a waiver of a party's right to recoup costs under Rule 54(d). 
See
 
Mason
 v. 
Belieu
, 543 F.2d 215, 222 (D.C. Cir.) (vacating a cost award where plaintiffs had failed to file a bill of costs), 
cert.
 
denied
Similarly, given the clarity and definiteness of the trial court's order, a post-trial motion for reconsideration was not required as a condition precedent to taking an appeal. 
See
 
Sherrill
 v. 
Royal Indus., Inc.
Franki Found. Co.
 v. 
, 513 F.2d 581, 587 (3d Cir. 1975).

 The law does not require litigants to run fools' errands. Thus, a party who forgoes an obviously futile task will not ordinarily be held thereby to have waived substantial rights. 
See
 
Franki Found. Co.
 v. 

see
 
also
 
Northern Heel Corp.
 v. 
Compo Indus., Inc.
, 851 F.2d 456, 461 (1st Cir. 1988) (stating, in a different context, that "[t]he law should not be construed idly to require parties to perform futile acts or to engage in empty rituals").

A somewhat closer question is whether appellants, by failing to ask the district court, after judgment entered, to readjust the mandatory assessments, thereby waived the right to raise that issue here. We hold they have not. Our decision is largely pragmatic. There is no rule specifically limiting the time within which a party may make a request for an order reallocating case-management expenses. 
Cf.
 
White
 v. 
New Hampshire Dep't of Employment Sec.
See
 
Singleton
 v. 
Wulff
United States
 v. 
La Guardia
, 902 F.2d 1010, 1013 (1st Cir. 1990). Here, we think it best to exercise our discretion, meet the problem head-on, and excuse appellants' failure to move for reallocation below.

IV. ANALYSIS

We turn now to the meat of the consolidated appeals. Appellants ask us to order that they be afforded a fair opportunity to recover their court costs and cost-sharing assessments either under Fed. R. Civ. P. 54(d) or under some other source of judicial power. We address these alternatives separately.

A. 
Rule 54(d)
.

1. 
General Operation
.
The section provides:

 A judge . . . may tax as costs the following:

(6) Compensation of court appointed experts, compensation of interpreters . . . and costs of special interpretation services . . . .

 Rule 54(d) works in tandem with the statute. It provides, with exceptions not pertinent here, that "costs shall be allowed as of course to the prevailing party unless the court otherwise directs." Fed. R. Civ. P. 54(d). The combined effect of the statute and rule is to cabin district court discretion in two ways.

First, section 1920 has an esemplastic effect. It fills the void resulting from Rule 54(d)'s failure to define the term "costs," 
see
 
Crawford Fitting Co.
 v. 
J. T. Gibbons, Inc.
, 482 U.S. 437, 441 (1987) (holding that "[section] 1920 defines the term `costs' as used in Rule 54(d)"), and in that way constrains the district court's power to determine which expense categories constitute taxable costs. In other words, the statute and rule, read together, signify that a district court lacks the ability to assess "costs" under Rule 54(d) above and beyond those that come within the statutory litany. 
See
 
id.

In light of the foregoing, we conclude that Rule 54(d) confers no discretion on federal courts independent of the statute to tax various types of expenses as costs. 
See
 
id.
accord
 
Denny
 v. 
Westfield State College
, 880 F.2d 1465, 1468 (1st Cir. 1989) (reasoning that, in light of 
Crawford
Freeman
 v. 
Package Mach. Co.
, 865 F.2d 1331, 1346 (1st Cir. 1988) (similar). Rather, the discretion that Rule 54(d) portends is solely a 
negative

Crawford
accord
 
Rodriguez-Garcia
 v. 
Davila
, 904 F.2d 90, 100 (1st Cir. 1990).

nisi
 
prius
 court to deviate from this baseline, 
see
, 
e.g.
, 
Phetosomphone
 v. 
Allison Reed Group, Inc.
Heddinger
 v. 
Ashford Memorial Community Hosp.
Emerson
 v. 
National Cylinder Gas Co.
, 251 F.2d 152, 158 (1st Cir. 1958), awarding costs to a prevailing party is the norm. 
See
 
Delta Air Lines, Inc.
 v. 
August
Crossman
 v. 
Marcoccio
, 806 F.2d 329, 331 (1st Cir. 1986) (observing that Rule 54(d) "generally permits prevailing parties to recover their costs"), 
cert.
 
denied
Castro
 v. 
United States
, 775 F.2d 399, 410 (1st Cir. 1985) (noting that a prevailing party "ordinarily is entitled" to recoup the costs enumerated in section 1920).

This presumption, then, constitutes the second constraint on a district court's ability to freewheel in the Rule 54(d) environment. After all, it is difficult to dispute the proposition that a court's discretion in implementing a rule which articulates a norm is more confined than a court's discretion in applying a nondirective rule. 
See
 
 v. 
American Hosp. Supply Corp.
Coyne-Delany Co.
 v. 
Capital Dev. Bd.
, 717 F.2d 385, 392 (7th Cir. 1983).

Beyond the presumption favoring cost recovery for prevailing parties, there is also fairly general agreement that a district court may not exercise its discretion to disallow a prevailing party's bill of costs in whole or in part without articulating reasons. 
See
 
Schwarz
 v. 
Folloder
Gilchrist
 v. 
Bolger
Baez
 v. 
United States Dep't of Justice
See
 
, 786 F.2d at 730.
9:
The 

See
 
, 786 F.2d at 730. 

 In the Seventh Circuit, costs may be denied only when the losing party is indigent or "there has been some fault, misconduct, default, or other action worthy of penalty" on the winner's side. 
Burroughs
 v. 
Hills
, 741 F.2d 1525, 1542 (7th Cir. 1984), 
cert.
 
denied
, 471 U.S. 1099 (1985).

To the present, this court has been more muted both about a district judge's duty to explain a denial of costs and about the reasons that may warrant such a denial.
10:
We have, however, reversed a district court's denial of costs to a prevailing party when the court neglected to furnish any valid explanation for the denial. 
See
 
Templeman
 v. 
Chris Craft Corp.
, 770 F.2d 245, 249 (1st Cir.), 
cert.
 
denied
, 474 U.S. 1021 (1985).

 In addressing those subjects today, we stop short of requiring district courts to state reasons or make elaborate findings in every case when acting under Rule 54(d). Instead, we hold that, if the basis for denying costs is readily apparent on the face of the record, a trial court need not explain its action merely for explanation's sake.
11:
Although we do not impose an absolute duty to set forth findings in all cases, we remind the district courts that "reasonably complete findings at the trial court level invariably facilitate the appellate task." 
United States
 v. 
De Jesus
, 984 F.2d 21, 22 n.4 (1st Cir. 1993).

 If, however, the situation is less than obvious, the court must offer some statement as to why it denied statutory costs to a prevailing party.

Adopting this rule balances the need for findings against the proliferation of busywork that threatens to inundate the district courts. It also parallels an approach that has served us well in analogous contexts. 
See
, 
e.g.
, 
Foster
 v. 
Mydas Assocs., Inc.
Figueroa-Ruiz
 v. 
Alegria
Figueroa-Rodriguez
 v. 
Lopez-Rivera
, 878 F.2d 1488, 1491 (1st Cir. 1988) (discussing the need for findings when the reasons for invoking Fed. R. Civ. P. 16(f)'s sanction provisions are less than evident).

2. 
Application
.
 Our overview completed, we now apply Rule 54(d) to the facts of this case. Appellants argue that the district court erred by summarily precluding an award of costs under Rule 54(d) without explanation and without even entertaining a bill of costs. We think the contention has partial merit.

a.

To the extent that the district court's order prevents appellants from reclaiming their mandatory cost-sharing assessments through the medium of Rule 54(d), we discern no error. As evidenced by the record, these payments were primarily directed into the operating budgets of the JDD and DLP. In a prior ruling, the district court explained that the assessments helped subsidize such general overhead expenses as rent, utilities, telephone charges, and staff salaries. 
See
 
Hotel Fire Litig.

Id.
see
 
also
 
Wahl
 v. 
Carrier Mfg. Co.
Moore's Federal Practice

We will not paint the lily. Rule 54(d) cannot be stretched beyond the parameters defined in section 1920. 
See
 
Denny
Templeman
 v. 
Chris Craft Corp.
, 770 F.2d 245, 249-50 (1st Cir.), 
cert.
 
denied
Bosse
 v. 
Litton Unit Handling Sys.
b.

 The district court's September 11, 1992 final judgment regarding the claims against the pre-fire insurers also barred recovery of any ordinary costs incurred by appellants. The district court gave no explanation for its curt preclusion of taxable costs, and none is evident from the record. Moreover, by acting in so peremptory a manner, the court foreclosed appellants from requesting ordinary costs in the ordinary fashion. 
See
 
generally
 D.P.R. Loc. R. 331.1 (allowing prevailing party ten days from entry of judgment in which to file a verified bill of costs). On this record, we think that the district court abused its discretion by depriving appellants of an opportunity to seek ordinary costs, presumptively taxable under Rule 54(d), without a word of explanation.
12:
Appellants indicate that they incurred some taxable photocopy expenses. 
See
 
generally
 
Rodriguez-Garcia
, 904 F.2d at 100 (holding certain photocopying expenses recoverable under Rule 54(d)). We have adequate reason to believe that they may also have incurred other expenses taxable as costs.

c.

B. 
Reallocation of Court-Ordered Assessments
.

Appellants also argue that, even if the mandatory assessments fall outside Rule 54(d)'s domain, they may still be reallocated. This asseveration supposes a federal court power, unrelated to Rule 54(d), to redistribute, after judgment, an initial division of discovery expenses among all parties, despite the absence of an explicit reservation of the right to do so.

We think appellants' premise is sound. We hold that a district court possesses the authority to reallocate court-imposed case-management expenses if, in the exercise of its considered judgment, it determines that equity and the interests of justice so require. In the sections that follow, we trace the derivation of that power, propose broad guidelines for its use, and discuss what remains to be done in this instance.

1. 
Source of Power
.
 The exigencies of complex, multidistrict litigation change the ordnance with which courtroom battles are fought. Traditional procedures for serving papers and gathering information must often give way to innovations promoting economy and efficiency. 
See
 
Manual for Complex Litigation

Id.

Id.
 at 6.

Recent amendments to the Civil Rules have augmented the trial judge's arsenal of case-management weapons. For example, the 1983 overhaul of Rule 16 "encourage[s] pretrial management that meets the needs of modern litigation." Fed. R. Civ. P. 16 advisory committee's notes. The drafters thought that cases would be disposed of "more efficiently and with less cost and delay" if "a trial judge intervene[s] personally at an early stage to assume judicial control over a case." 
Id.
see
 
also
 
Figueroa-Rodriguez
, 878 F.2d at 1490 (acknowledging that in a time "of increasingly complicated cases and burgeoning filings, judges must have at their fingertips smooth-running, productive machinery for conducting litigation and managing caseloads").

In this multidistrict litigation, involving upward of 2000 parties and raising a googol of issues, Judge Acosta's power to mandate contributions to, 
inter
 
alia
, a central discovery depository can scarcely be doubted. 
See
 
Recticel
see
 
also
 David F. Herr, 
Multidistrict Litigation

per
 
se
, Rule 26(f) expressly authorizes trial judges, following discovery conferences, to enter orders for "the allocation of expenses[] as are necessary for the proper management of discovery." Fed. R. Civ. P. 26(f).
13:
Fed. R. Civ. P. 26(f) was adopted in 1980 in the hope that judicial intervention would curb discovery abuse. 
See
 Fed. R. Civ. P. 26(f) advisory committee's notes. Among other things, the rule interjects the trial court in developing "a reasonable program or plan for discovery." 
Id.

 We believe that this rule is flexible enough to serve as the source of judicial authority for imposing cost-sharing orders in complex cases.
14:
This court has already remarked the striking similarity between ordinary discovery orders and the case-management orders that Judge Acosta tailored for use in this litigation. 
See
 
Recticel
, 859 F.2d at 1002-03.

The expense allocation orders Rule 26(f) authorizes "may be altered or amended whenever justice so requires." Fed. R. Civ. P. 26(f). For that reason, as well as on the basis of common sense, a trial judge's power to promulgate cost-sharing orders must carry with it the power to readjust such orders as changed circumstances require. Indeed, in denying a petition for mandamus addressed to the propriety of the very cost-sharing orders here at issue, we acknowledged the district court's power to "reshape and refashion its cost-sharing orders as new information comes to light, or as information already known takes on added significance." 
Recticel
, 859 F.2d at 1004. We reaffirm this message today,
15:
While we emphasize that the power we describe here is an implied power derived from the Civil Rules, we note that the Supreme Court has, in limited circumstances, sanctioned federal court resort to an intrinsic power analogous to its statutory prerogative to assess costs and attorneys' fees. 
See
 
Chambers
 v. 
NASCO, Inc.
Alyeska Pipeline Serv. Co.
 v. 
Wilderness Soc'y
, 421 U.S. 240, 258-59 (1975) (similar). Be that as it may, we need not decide today whether, apart from the power derived from the Civil Rules, a district court possesses the inherent power to effectuate reallocation of cost-sharing assessments previously imposed.

 confident that our reading of Rule 26(f) does not loose some strange new beast to prey on unsuspecting litigants. In the last analysis, a district court's intrinsic power to alter its own directives is a familiar one, applicable to many other sorts of pretrial orders. 
See
, 
e.g.
, 
Poliquin
 v. 
Garden Way, Inc.
, ___ F.2d ___, ___ (1st Cir. 1993) [Nos. 92-1115, 92-1116, slip op. at 20] (noting that pretrial protective orders are "always subject to the inherent power of the district court to relax or terminate the order, even after judgment").

Consequently, we hold that, despite the absence of any language in a cost-sharing order reserving a trial judge's right to rearrange the burdens therein imposed at a later date, "it is certain beyond peradventure that [a] district court can . . . entertain motions for the reallocation of expenses." 
Recticel
, 859 F.2d at 1004-05. This power is the logical (and, we think, necessary) extension of the court's authority to fashion pretrial cost-sharing orders in the first place.

To say that the power to reallocate assessments under cost-sharing orders can fairly be implied from the Civil Rules is not to say that the district court's exercise of that power is unbridled. In our view, the power is coupled with an interest in fairness and its exercise must, therefore, comport with first principles of equity. It is to this unexplored terrain that we now turn.

2. 
The Standards Governing Reallocation
.
 Although cost-sharing orders are 
sui
 
generis
, they almost always constitute a way of fueling an array of hand-crafted procedural devices designed to sort and resolve myriad claims in an equitable, efficient, comparatively inexpensive manner. A subsequent decision to readjust the burdens imposed by such orders, and the specific redistribution that results, must remain faithful to that aim.
16:
We limit our discussion to cases where, as here, mandatory cost-sharing orders are largely silent on the matter of an eventual redistribution of expenses. A district court may, of course, build into a cost-sharing order a mechanism for eventual redistribution, the structure and propriety of which would have to be considered on its own merits against the backdrop of the particular litigation. Indeed, the court below formulated such a mechanism, but limited its operation to cost-sharing assessments levied against plaintiffs' attorneys. 
See
see
 
also
 
supra
 note 2.

 The power to readjust, then, must be exercised in accordance with a set of equitable principles, shaped by the circumstances indigenous to the litigation but rooted in the concept that court-imposed burdens should, in the end, balance derived benefits. In the paragraphs that follow, we touch lightly upon certain fundamental principles that should inform the determination of whether a post-judgment reallocation of court-ordered expenses is advisable, and if so, to what extent. 

a.

Upon motion, a district court should consider reallocating costs after entry of judgment when, with the acuity of hindsight, it determines that a party or group of parties has significantly failed to derive the expected benefits from burdens imposed under cost-sharing orders entered earlier in the litigation, or has derived those benefits to a significantly greater or lesser extent than other similarly situated parties. This rule dominates the constellation of factors bearing on the decision to reallocate.

b.

In contrast to the well-recognized presumption that prevailing parties should recover their taxable costs under Rule 54(d), there is no basis for a parallel presumption that the winners' case-management expenses should be borne by the losers. Thus, a prevailing party will not automatically receive a favorable reallocation, but must persuade the court of an entitlement to one. This conclusion flows naturally from the idea that derived benefit is the shining star in the readjustment galaxy: when all is said and done, the benefit a party secures from forced contributions to joint ventures in complex litigation may be unrelated, or vastly disproportionate, to the party's success on the merits.

c.

To say that prevailing parties are not presumptively entitled to a favorable reallocation of cost-sharing assessments is not to say that either the fact or the scope of a litigant's victory is irrelevant to a district court's reassessment of the matter. The inherent clarity of a case and the ease with which it can be decided without resort to heroic measures ordinarily affect the degree of benefit the prevailing party obtains from the availability of innovative procedural mechanisms. Hence, the extent to which a litigant achieves a swift, across-the-board success not correlated with case-management tools must necessarily inform the district court's reallocation decision. The presence of knotty issues, fought, in the Stalingrad tradition, from rock to rock and tree to tree, often cuts the other way. Close cases, particularly those that are fact-dominated, tend to be cases in which all parties derive considerable benefit from the availability of sophisticated case-management tools.

d.

We recognize that the presence of an indigent party may affect the reallocation decision. 
Cf.
, 
e.g.
, 
Neitzke
 v. 
Williams
Adkins
 v. 
, 335 U.S. 331, 339 (1948) (refusing to require litigants "to contribute to payment of costs[] the last dollar they have or can get" before becoming entitled to 
forma
 
pauperis
Aggarwal
 v. 
Ponce Sch. of Medicine
Burroughs
, 741 F.2d at 1542 (allowing a district court to deny costs under Rule 54(d) when the losing party is indigent). We do not probe the point, however, because no party involved in these appeals has asserted such a claim. 

 Although the operative considerations are not entirely the same, this principle parallels the Sixth Circuit's longstanding view that a prevailing party's ability to pay his or her own costs is an improper basis for refusing to tax costs against the loser under Rule 54(d). 
See
 

Lewis
 v. 
Pennington
, 400 F.2d 806, 819 (6th Cir.), 
cert.
 
denied
, 393 U.S. 983 (1968). 

e.

Cost-sharing orders are designed to inure to the benefit of all contributing parties. A case's history and particular circumstances may reveal that some parties carried heavy, even excessive, loads, while other parties enjoyed a relatively free ride. Reallocating cost-sharing assessments affords a way of balancing case-specific inequities. For example, a party's interjection of unmeritorious issues that unnecessarily lengthen the litigation might favor the conclusion that others have paid too much and the interjector has paid too little. 
Cf.
 
Lichter Found., Inc.
 v. 
Welch
, 269 F.2d 142, 146 (6th Cir. 1959) (approving denials of costs to prevailing parties under Rule 54(d) on this basis). A cost-readjustment analysis, like all decisions grounded in equity, must leave room for such case-specific factors.

f.

We believe that we have said enough to erect a flexible framework for reallocation analysis and, hopefully, to provide a modicum of general guidance to the district courts. We caution that the relative weight and impact of relevant considerations will vary from situation to situation, and, moreover, that, given the virtually limitless number of permutations likely to be encountered in civil litigation, our compendium of factors is not all-encompassing.

3. 
Remedy
.
 The question of remedy remains. It is clear that an appellate court is not the most propitious forum for shaking up a preexisting expense allocation. By definition, cost-sharing orders originate with the district court as a component of the court's case-management function. Given the district judge's intimate knowledge of the circumstances under which the imposts were conceived, his familiarity with the nature and purposes of the assessments, his front row seat throughout the litigation, and his matchless ability to measure the benefits and burdens of cost-sharing to the parties in light of the litigation's progress and stakes, we are convinced that the district judge has the coign of vantage best suited to determining, in the first instance, whether, and if so, how, the initial cost-sharing orders should be modified. We are keenly aware that this litigation has exhibited a capacity to chew up endless amounts of judicial resources and we are extremely reluctant to prolong matters. Here, however, the necessity for remanding is plain: not only is the trial judge best equipped to address the remaining problems, but also, as we explain below, there is at least a 
prima
 
facie
 case for some reallocation of the assessments. Indeed, the collocation of circumstances strongly suggests that the pre-fire insurers did not reap in full the benefits associated with several of the procedural innovations they helped to fund. We run the gamut.

More than half of each appellant's assessment supplemented the budgets of the JDC and JDD, facilities devoted to the economical coordination and speedy completion of discovery. Because the pre-fire insurers defeated all adverse claims through dispositive motions short of trial, on purely legal grounds, the benefit they derived from these innovations was most likely minimal. The near-complete closure of discovery prior to appellants' appearance in the litigation, 
see
 
supra
Nevertheless, thirteen appellants contend that they utilized 
no
 evidence contained in the JDD to support their dispositive motions.

The early stage at which the district court dismissed all claims against appellants also creates doubt as to whether the substantial assessments, geared largely toward efficient fact gathering, inured to appellants' benefit to any meaningful degree. The pre-fire insurers prevailed on all claims, as a matter of law, without going to trial. The district court, having determined that no issue of fact needed debate and that appellees' arguments had no basis in law, 
see
 
Hotel Fire Litig.
, 802 F. Supp. at 635, 644, might be hard-pressed to conclude that appellants' huge expenditures, diverted to facilities designed, in large part, to collect, sort, and maintain factual documents, were integral to, or even marginally connected with, the pursuit of their cause.

see
, 
e.g.
, 
Societe des Produits Nestle, S.A.
 v. 
Casa Helvetia, Inc.
V. BANKRUPTCY OF AN AFFILIATED ENTITY

This assertion need not detain us. As a general rule, section 362(a)'s automatic stay provisions apply only to the debtor in bankruptcy. 
See
 
Austin
 v. 
Unarco Indus., Inc.
, 705 F.2d 1, 4 (1st Cir.), 
cert.
 
dismissed
see
 
generally

In re Western Real Estate Fund, Inc.
, 922 F.2d 592, 600 (10th Cir. 1990), 
modified
 
on
 
other
 
grounds
, 932 F.2d 898 (10th Cir. 1991). As entities legally distinct from HoCap, 
see
 
Parkview-Gem, Inc.
 v. 
Stein
, 516 F.2d 807, 811 (8th Cir. 1975) (holding that where debtor, 
qua
In re Bank Ctr., Ltd.
, 15 B.R. 64, 65 (Bankr. W.D. Pa. 1981) (refusing to stay an action against the partner of a bankrupt partnership because a "partner is a separate entity from the partnership"), the two corporate appellees are not presumptively entitled to the protection of any automatic stay which may be extant in the HoCap bankruptcy proceeding. Since these appeals implicate no attempt to assert, enforce or recover any claim against HoCap or its property, the appeals may proceed.

See
see
 
also
 
Fragoso
 v. 
Lopez
, 
 
 F.2d 
 
, 
 
Picco
 v. 
Global Marine Drilling Co.
, 900 F.2d 846, 850 (5th Cir. 1990) ("The automatic stay of the bankruptcy court does not divest all other courts of jurisdiction to hear every claim that is in any way related to the bankruptcy proceeding.").

VI. CONCLUSION

We also hold that the district court possesses the implied power, under Fed. R. Civ. P. 26(f), to revisit the initial allocations of case-management expenses and readjust the same as equity may require. Because the lower court did not afford appellants a fair opportunity to seek such a reallocation, we remand for that purpose as well. Appellants shall file their motions to reallocate with the district court no later than thirty days from the date our mandate issues.
19:
In this connection we urge the district courts within this circuit to consider framing local rules to the effect that, henceforth, any application for reallocation of court-imposed cost-sharing expenses must be filed within thirty days of the entry of final judgment. 
Cf.
 
White
Obin
 v. 
, 651 F.2d 574, 583 (8th Cir. 1981) (recommending a rule that claims for attorneys' fees must be filed within twenty-one days after entry of judgment).

.

UNITED STATES COURT OF APPEALS

FOR THE FIRST CIRCUIT

_________________________

Nos. 92-2312

 92-2313

IN RE: TWO APPEALS ARISING OUT OF THE

SAN JUAN DUPONT PLAZA HOTEL FIRE LITIGATION.

_________________________

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Raymond L. Acosta, 
U.S. District Judge
]

_________________________

Before

Selya and Cyr, 
Circuit Judges
,

and Fuste,* 
District Judge
.

_________________________

Paul K. Connolly, Jr.
, with whom 
Damian R. LaPlaca
, 
, 
Ralph W. Dau
, 
Peter B. Ackerman
, 
Jeffrey W. Kilduff
, 
, 
Raul E. Gonzalez-Diaz
, 
A.J. Bennazar-Zequeira
, 
, 
Andrew K. Epting, Jr.
, 
G. Trenholm Walker
, 
, 
Homer L. Marlow
, 
William G. Liston
, 
, 
Deborah A. Pitts
, 
, 
Bethany K. Culp
, 
Patrick McCoy
, 
, 
Lon Harris
, 
, 
Stuart W. Axe
, 
, 
Adrian Mercado
, 
, 
Virgilio Mendez Cuesta
, 
Ernesto Rodriguez-Suris
, and 
 were on consolidated briefs, for appellants.

Gary L. Bostwick
, with whom 
R. Lance Belsome
 was on brief, for appellees Hotel Systems International, et al.

Alvaro Calderon
, with whom 
Will Kemp
 and 
Monita F. Sterling
, PSC Liaison, were on brief, for appellee Plaintiffs' Steering Committee.

_________________________

June 4, 1993

_________________________

_______________

*Of the District of Puerto Rico, sitting by designation.

SELYA, 
Circuit Judge
.
 These consolidated appeals require us to grapple for the first time with a looming problem in modern federal court practice: how, if at all, should expenses indigenous to a court's handling of mass disaster litigation be reallocated once the winners and losers have been judicially determined? Here, the appellants, late-joined defendants and defendants in cross-claim, prevailed in the underlying litigation. Nonetheless, the district court, coincident with the entry of judgment, effectively foreclosed them from either seeking costs under Fed. R. Civ. P. 54(d) or otherwise lobbying for reallocation of several hundreds of thousands of dollars in court-ordered expense assessments. Finding that the court's abrupt slamming of these doors was improvident, we vacate the relevant portion of the judgment and remand for further proceedings.

I. BACKGROUND

In 1987, the Judicial Panel on Multidistrict Litigation appointed the Honorable Raymond L. Acosta, a United States District Judge for the District of Puerto Rico, to handle some 270 cases arising out of the deadly fire that had earlier engulfed the San Juan Dupont Plaza Hotel. 
See
 
In re Fire Disaster at Dupont Plaza Hotel
, 660 F. Supp. 982 (J.P.M.L. 1987) (per curiam). Judge Acosta's stewardship proved "a model of judicial craftsmanship and practical ingenuity." 
In re Nineteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.
, 982 F.2d 603, 606 (1st Cir. 1992). Among the many successful innovations that brought the litigation to a celeritous conclusion were (1) the creation of a Joint Document Depository (JDD), which housed and copied for distribution all discovery materials, 
see
see
 
id.
see
 
In re Recticel Foam Corp.
, 859 F.2d 1000, 1001 (1st Cir. 1988) (describing operation of JDC). To fund these innovations, the district court entered a series of case-management orders which imposed mandatory assessments upon all litigants.
20:
Because the mechanics of the allocation process are not critical for present purposes, we supply merely a thumbnail sketch. The Plaintiffs' Steering Committee (PSC) and the defendant San Juan Dupont Plaza Hotel Corporation were assessed a total of $100,000 to defray the JDD's start-up costs. 
See
 Pretrial Order No. 127, at 69-70. Thereafter, each litigant paid for JDD-related services actually used. 
See
 
id.
 at 70. To cover costs that were not offset by service charges (
e.g.
, the JDD's overhead expenses), the district court imposed mandatory assessments. Initially, at least, the PSC bore 15% of the incremental cost and the defendants, collectively, bore 85%. 
See
 
id.
 at 71. Within the defense collective, per-member assessments were presumably equal.

 In this way, the court periodically requisitioned fresh monies as funds on hand were depleted. The orders were silent as to (i) whether or not the court planned to readjust defendants' contributions in light of future developments, and (ii) the court's authority, if any, to effectuate such reallocations.
21:
We add a small qualifier to this statement. Pretrial Order No. 127 is a document in excess of 200 pages dealing with a potpourri of matters. The portion of the order that discusses defendants' assessments does not address either of the two points mentioned in the text. However, in the portion of the document that addresses assessments imposed on plaintiffs' attorneys to fund the PSC and enable it to make its cost-sharing contributions, the district court provides for possible "reallocation of expenses based upon the actual, relative recovery" achieved by the various plaintiffs. 
Id.
 at 39. At the very end of the document, the district court states that "[t]his Order may be either amended or modified by the Court 
sua
 
sponte
 or upon good cause shown." 
Id.
 at 205. None of the parties argue that either of the provisions we have identified relate to the possible reallocation of cost-sharing assessments levied against appellants (or any defendants, for that matter). And, none of the other orders contain any language, general or specific, similar to that which we have quoted. 

see
 Pretrial Order No. 127, at 96-97, the pre-fire insurers' investigation of the newly emergent claims against them necessarily centered around a review of documents stored in the JDD.
22:
In one attempt to conduct some independent discovery, the pre-fire insurers moved to reopen discovery for ninety days. The docket sheet indicates that this motion was granted on March 19, 1991, albeit only for a three-day period.

The pre-fire insurers quickly filed dispositive motions. The district court, faced with more pressing problems, was slow in addressing the motions. Finally, the court granted them on September 11, 1992, 
see
 
In re San Juan Dupont Plaza Hotel Fire Litig.
, 802 F. Supp. 624 (D.P.R. 1992), 
aff'd
, 989 F.2d 36 (1st Cir. 1993), entered judgment in favor of the pre-fire insurers on all claims, and decreed that the parties would bear their own costs.

On appeal, seventeen pre-fire insurers complain that the district court abused its discretion by summarily precluding both an award of costs and a complete or partial refund of the cost-sharing assessments.
23: The fire victims, represented by the Plaintiffs' Steering Committee (PSC), and two cross-claimants, Hotel Systems International (HSI) and Dupont Plaza Associates (Associates), filed opposition briefs and participated in oral argument.

II. NATURE OF THE STAKES

In the expectation that describing the disputed expenditures in greater detail will help to put matters in the proper perspective, we travel that route.

A. 
Court-Ordered Assessments
.

The vast majority of appellants' outlays comprise mandatory payments imposed by six orders of the district court. 
See
supra
See
We fully understand appellants' submissiveness, inasmuch as refusal to pay would have resulted in sanctions, 
see
See
 
Recticel
, 859 F.2d at 1006.

Appellants' tribute helped to fund the various instrumentalities that Judge Acosta had set in place to expedite the litigation. Thus, out of each insurer's total contribution ($41,500), $18,000 went toward defraying the JDD's operating expenses, 
see
see
 
id.
The DLP was responsible for receiving, on behalf of all defendants, and disseminating, among all defense counsel, court orders and discovery materials. 
See
 Pretrial Order No. 127, at 62-63.

 
See
 
id.
See
 Pretrial Order No. 135, at 9. The idea was abandoned and the funds in question were eventually utilized for operational costs of the JDD and DLP. 
See
 
In re San Juan Dupont Plaza Hotel Fire Litig.
, 142 F.R.D. 41, 46 n.20 (D.P.R. 1992).
 Therefore, the figures recited above, insofar as they pertain to the JDD and DLP, are minimum estimates.

B. 
Ordinary Costs
.

Presumably, the payments made pursuant to the cost-sharing orders, though substantial, do not comprise the whole of appellants' investment in this sprawling litigation. Their successful defense doubtless required other, more commonplace expenditures, such as photocopy costs of the type and kind routinely associated with litigation. 
See
, 
e.g.
III. WAIVER

Having described the expenses appellants seek to recoup, we pause to address a threshold matter. The plaintiffs submit that the pre-fire insurers waived any claim for expense recovery by failing to file bills of costs after judgment entered. 
See
 
id.
 (requiring bill of costs to be filed). We demur: the doctrine of waiver presents no barrier to appellants' attempt to recover court costs or request a reallocation of the mandatory cost-sharing assessments. 

To be sure, the failure seasonably to file a bill of costs with the district court may, in certain circumstances, constitute a waiver of a party's right to recoup costs under Rule 54(d). 
See
 
Mason
 v. 
Belieu
, 543 F.2d 215, 222 (D.C. Cir.) (vacating a cost award where plaintiffs had failed to file a bill of costs), 
cert.
 
denied
Similarly, given the clarity and definiteness of the trial court's order, a post-trial motion for reconsideration was not required as a condition precedent to taking an appeal. 
See
 
Sherrill
 v. 
Royal Indus., Inc.
Franki Found. Co.
 v. 
, 513 F.2d 581, 587 (3d Cir. 1975).

 The law does not require litigants to run fools' errands. Thus, a party who forgoes an obviously futile task will not ordinarily be held thereby to have waived substantial rights. 
See
 
Franki Found. Co.
 v. 

see
 
also
 
Northern Heel Corp.
 v. 
Compo Indus., Inc.
, 851 F.2d 456, 461 (1st Cir. 1988) (stating, in a different context, that "[t]he law should not be construed idly to require parties to perform futile acts or to engage in empty rituals").

A somewhat closer question is whether appellants, by failing to ask the district court, after judgment entered, to readjust the mandatory assessments, thereby waived the right to raise that issue here. We hold they have not. Our decision is largely pragmatic. There is no rule specifically limiting the time within which a party may make a request for an order reallocating case-management expenses. 
Cf.
 
White
 v. 
New Hampshire Dep't of Employment Sec.
See
 
Singleton
 v. 
Wulff
United States
 v. 
La Guardia
, 902 F.2d 1010, 1013 (1st Cir. 1990). Here, we think it best to exercise our discretion, meet the problem head-on, and excuse appellants' failure to move for reallocation below.

IV. ANALYSIS

We turn now to the meat of the consolidated appeals. Appellants ask us to order that they be afforded a fair opportunity to recover their court costs and cost-sharing assessments either under Fed. R. Civ. P. 54(d) or under some other source of judicial power. We address these alternatives separately.

A. 
Rule 54(d)
.

1. 
General Operation
.
The section provides:

 A judge . . . may tax as costs the following:

(6) Compensation of court appointed experts, compensation of interpreters . . . and costs of special interpretation services . . . .

 Rule 54(d) works in tandem with the statute. It provides, with exceptions not pertinent here, that "costs shall be allowed as of course to the prevailing party unless the court otherwise directs." Fed. R. Civ. P. 54(d). The combined effect of the statute and rule is to cabin district court discretion in two ways.

First, section 1920 has an esemplastic effect. It fills the void resulting from Rule 54(d)'s failure to define the term "costs," 
see
 
Crawford Fitting Co.
 v. 
J. T. Gibbons, Inc.
, 482 U.S. 437, 441 (1987) (holding that "[section] 1920 defines the term `costs' as used in Rule 54(d)"), and in that way constrains the district court's power to determine which expense categories constitute taxable costs. In other words, the statute and rule, read together, signify that a district court lacks the ability to assess "costs" under Rule 54(d) above and beyond those that come within the statutory litany. 
See
 
id.

In light of the foregoing, we conclude that Rule 54(d) confers no discretion on federal courts independent of the statute to tax various types of expenses as costs. 
See
 
id.
accord
 
Denny
 v. 
Westfield State College
, 880 F.2d 1465, 1468 (1st Cir. 1989) (reasoning that, in light of 
Crawford
Freeman
 v. 
Package Mach. Co.
, 865 F.2d 1331, 1346 (1st Cir. 1988) (similar). Rather, the discretion that Rule 54(d) portends is solely a 
negative

Crawford
accord
 
Rodriguez-Garcia
 v. 
Davila
, 904 F.2d 90, 100 (1st Cir. 1990).

nisi
 
prius
 court to deviate from this baseline, 
see
, 
e.g.
, 
Phetosomphone
 v. 
Allison Reed Group, Inc.
Heddinger
 v. 
Ashford Memorial Community Hosp.
Emerson
 v. 
National Cylinder Gas Co.
, 251 F.2d 152, 158 (1st Cir. 1958), awarding costs to a prevailing party is the norm. 
See
 
Delta Air Lines, Inc.
 v. 
August
Crossman
 v. 
Marcoccio
, 806 F.2d 329, 331 (1st Cir. 1986) (observing that Rule 54(d) "generally permits prevailing parties to recover their costs"), 
cert.
 
denied
Castro
 v. 
United States
, 775 F.2d 399, 410 (1st Cir. 1985) (noting that a prevailing party "ordinarily is entitled" to recoup the costs enumerated in section 1920).

This presumption, then, constitutes the second constraint on a district court's ability to freewheel in the Rule 54(d) environment. After all, it is difficult to dispute the proposition that a court's discretion in implementing a rule which articulates a norm is more confined than a court's discretion in applying a nondirective rule. 
See
 
 v. 
American Hosp. Supply Corp.
Coyne-Delany Co.
 v. 
Capital Dev. Bd.
, 717 F.2d 385, 392 (7th Cir. 1983).

Beyond the presumption favoring cost recovery for prevailing parties, there is also fairly general agreement that a district court may not exercise its discretion to disallow a prevailing party's bill of costs in whole or in part without articulating reasons. 
See
 
Schwarz
 v. 
Folloder
Gilchrist
 v. 
Bolger
Baez
 v. 
United States Dep't of Justice
See
 
, 786 F.2d at 730.
28:
The 

See
 
, 786 F.2d at 730. 

 In the Seventh Circuit, costs may be denied only when the losing party is indigent or "there has been some fault, misconduct, default, or other action worthy of penalty" on the winner's side. 
Burroughs
 v. 
Hills
, 741 F.2d 1525, 1542 (7th Cir. 1984), 
cert.
 
denied
, 471 U.S. 1099 (1985).

To the present, this court has been more muted both about a district judge's duty to explain a denial of costs and about the reasons that may warrant such a denial.
29:
We have, however, reversed a district court's denial of costs to a prevailing party when the court neglected to furnish any valid explanation for the denial. 
See
 
Templeman
 v. 
Chris Craft Corp.
, 770 F.2d 245, 249 (1st Cir.), 
cert.
 
denied
, 474 U.S. 1021 (1985).

 In addressing those subjects today, we stop short of requiring district courts to state reasons or make elaborate findings in every case when acting under Rule 54(d). Instead, we hold that, if the basis for denying costs is readily apparent on the face of the record, a trial court need not explain its action merely for explanation's sake.
30:
Although we do not impose an absolute duty to set forth findings in all cases, we remind the district courts that "reasonably complete findings at the trial court level invariably facilitate the appellate task." 
United States
 v. 
De Jesus
, 984 F.2d 21, 22 n.4 (1st Cir. 1993).

 If, however, the situation is less than obvious, the court must offer some statement as to why it denied statutory costs to a prevailing party.

Adopting this rule balances the need for findings against the proliferation of busywork that threatens to inundate the district courts. It also parallels an approach that has served us well in analogous contexts. 
See
, 
e.g.
, 
Foster
 v. 
Mydas Assocs., Inc.
Figueroa-Ruiz
 v. 
Alegria
Figueroa-Rodriguez
 v. 
Lopez-Rivera
, 878 F.2d 1488, 1491 (1st Cir. 1988) (discussing the need for findings when the reasons for invoking Fed. R. Civ. P. 16(f)'s sanction provisions are less than evident).

2. 
Application
.
 Our overview completed, we now apply Rule 54(d) to the facts of this case. Appellants argue that the district court erred by summarily precluding an award of costs under Rule 54(d) without explanation and without even entertaining a bill of costs. We think the contention has partial merit.

a.

To the extent that the district court's order prevents appellants from reclaiming their mandatory cost-sharing assessments through the medium of Rule 54(d), we discern no error. As evidenced by the record, these payments were primarily directed into the operating budgets of the JDD and DLP. In a prior ruling, the district court explained that the assessments helped subsidize such general overhead expenses as rent, utilities, telephone charges, and staff salaries. 
See
 
Hotel Fire Litig.

Id.
see
 
also
 
Wahl
 v. 
Carrier Mfg. Co.
Moore's Federal Practice

We will not paint the lily. Rule 54(d) cannot be stretched beyond the parameters defined in section 1920. 
See
 
Denny
Templeman
 v. 
Chris Craft Corp.
, 770 F.2d 245, 249-50 (1st Cir.), 
cert.
 
denied
Bosse
 v. 
Litton Unit Handling Sys.
b.

 The district court's September 11, 1992 final judgment regarding the claims against the pre-fire insurers also barred recovery of any ordinary costs incurred by appellants. The district court gave no explanation for its curt preclusion of taxable costs, and none is evident from the record. Moreover, by acting in so peremptory a manner, the court foreclosed appellants from requesting ordinary costs in the ordinary fashion. 
See
 
generally
 D.P.R. Loc. R. 331.1 (allowing prevailing party ten days from entry of judgment in which to file a verified bill of costs). On this record, we think that the district court abused its discretion by depriving appellants of an opportunity to seek ordinary costs, presumptively taxable under Rule 54(d), without a word of explanation.
31:
Appellants indicate that they incurred some taxable photocopy expenses. 
See
 
generally
 
Rodriguez-Garcia
, 904 F.2d at 100 (holding certain photocopying expenses recoverable under Rule 54(d)). We have adequate reason to believe that they may also have incurred other expenses taxable as costs.

c.

B. 
Reallocation of Court-Ordered Assessments
.

Appellants also argue that, even if the mandatory assessments fall outside Rule 54(d)'s domain, they may still be reallocated. This asseveration supposes a federal court power, unrelated to Rule 54(d), to redistribute, after judgment, an initial division of discovery expenses among all parties, despite the absence of an explicit reservation of the right to do so.

We think appellants' premise is sound. We hold that a district court possesses the authority to reallocate court-imposed case-management expenses if, in the exercise of its considered judgment, it determines that equity and the interests of justice so require. In the sections that follow, we trace the derivation of that power, propose broad guidelines for its use, and discuss what remains to be done in this instance.

1. 
Source of Power
.
 The exigencies of complex, multidistrict litigation change the ordnance with which courtroom battles are fought. Traditional procedures for serving papers and gathering information must often give way to innovations promoting economy and efficiency. 
See
 
Manual for Complex Litigation

Id.

Id.
 at 6.

Recent amendments to the Civil Rules have augmented the trial judge's arsenal of case-management weapons. For example, the 1983 overhaul of Rule 16 "encourage[s] pretrial management that meets the needs of modern litigation." Fed. R. Civ. P. 16 advisory committee's notes. The drafters thought that cases would be disposed of "more efficiently and with less cost and delay" if "a trial judge intervene[s] personally at an early stage to assume judicial control over a case." 
Id.
see
 
also
 
Figueroa-Rodriguez
, 878 F.2d at 1490 (acknowledging that in a time "of increasingly complicated cases and burgeoning filings, judges must have at their fingertips smooth-running, productive machinery for conducting litigation and managing caseloads").

In this multidistrict litigation, involving upward of 2000 parties and raising a googol of issues, Judge Acosta's power to mandate contributions to, 
inter
 
alia
, a central discovery depository can scarcely be doubted. 
See
 
Recticel
see
 
also
 David F. Herr, 
Multidistrict Litigation

per
 
se
, Rule 26(f) expressly authorizes trial judges, following discovery conferences, to enter orders for "the allocation of expenses[] as are necessary for the proper management of discovery." Fed. R. Civ. P. 26(f).
32:
Fed. R. Civ. P. 26(f) was adopted in 1980 in the hope that judicial intervention would curb discovery abuse. 
See
 Fed. R. Civ. P. 26(f) advisory committee's notes. Among other things, the rule interjects the trial court in developing "a reasonable program or plan for discovery." 
Id.

 We believe that this rule is flexible enough to serve as the source of judicial authority for imposing cost-sharing orders in complex cases.
33:
This court has already remarked the striking similarity between ordinary discovery orders and the case-management orders that Judge Acosta tailored for use in this litigation. 
See
 
Recticel
, 859 F.2d at 1002-03.

The expense allocation orders Rule 26(f) authorizes "may be altered or amended whenever justice so requires." Fed. R. Civ. P. 26(f). For that reason, as well as on the basis of common sense, a trial judge's power to promulgate cost-sharing orders must carry with it the power to readjust such orders as changed circumstances require. Indeed, in denying a petition for mandamus addressed to the propriety of the very cost-sharing orders here at issue, we acknowledged the district court's power to "reshape and refashion its cost-sharing orders as new information comes to light, or as information already known takes on added significance." 
Recticel
, 859 F.2d at 1004. We reaffirm this message today,
34:
While we emphasize that the power we describe here is an implied power derived from the Civil Rules, we note that the Supreme Court has, in limited circumstances, sanctioned federal court resort to an intrinsic power analogous to its statutory prerogative to assess costs and attorneys' fees. 
See
 
Chambers
 v. 
NASCO, Inc.
Alyeska Pipeline Serv. Co.
 v. 
Wilderness Soc'y
, 421 U.S. 240, 258-59 (1975) (similar). Be that as it may, we need not decide today whether, apart from the power derived from the Civil Rules, a district court possesses the inherent power to effectuate reallocation of cost-sharing assessments previously imposed.

 confident that our reading of Rule 26(f) does not loose some strange new beast to prey on unsuspecting litigants. In the last analysis, a district court's intrinsic power to alter its own directives is a familiar one, applicable to many other sorts of pretrial orders. 
See
, 
e.g.
, 
Poliquin
 v. 
Garden Way, Inc.
, ___ F.2d ___, ___ (1st Cir. 1993) [Nos. 92-1115, 92-1116, slip op. at 20] (noting that pretrial protective orders are "always subject to the inherent power of the district court to relax or terminate the order, even after judgment").

Consequently, we hold that, despite the absence of any language in a cost-sharing order reserving a trial judge's right to rearrange the burdens therein imposed at a later date, "it is certain beyond peradventure that [a] district court can . . . entertain motions for the reallocation of expenses." 
Recticel
, 859 F.2d at 1004-05. This power is the logical (and, we think, necessary) extension of the court's authority to fashion pretrial cost-sharing orders in the first place.

To say that the power to reallocate assessments under cost-sharing orders can fairly be implied from the Civil Rules is not to say that the district court's exercise of that power is unbridled. In our view, the power is coupled with an interest in fairness and its exercise must, therefore, comport with first principles of equity. It is to this unexplored terrain that we now turn.

2. 
The Standards Governing Reallocation
.
 Although cost-sharing orders are 
sui
 
generis
, they almost always constitute a way of fueling an array of hand-crafted procedural devices designed to sort and resolve myriad claims in an equitable, efficient, comparatively inexpensive manner. A subsequent decision to readjust the burdens imposed by such orders, and the specific redistribution that results, must remain faithful to that aim.
35:
We limit our discussion to cases where, as here, mandatory cost-sharing orders are largely silent on the matter of an eventual redistribution of expenses. A district court may, of course, build into a cost-sharing order a mechanism for eventual redistribution, the structure and propriety of which would have to be considered on its own merits against the backdrop of the particular litigation. Indeed, the court below formulated such a mechanism, but limited its operation to cost-sharing assessments levied against plaintiffs' attorneys. 
See
see
 
also
 
supra
 note 2.

 The power to readjust, then, must be exercised in accordance with a set of equitable principles, shaped by the circumstances indigenous to the litigation but rooted in the concept that court-imposed burdens should, in the end, balance derived benefits. In the paragraphs that follow, we touch lightly upon certain fundamental principles that should inform the determination of whether a post-judgment reallocation of court-ordered expenses is advisable, and if so, to what extent. 

a.

Upon motion, a district court should consider reallocating costs after entry of judgment when, with the acuity of hindsight, it determines that a party or group of parties has significantly failed to derive the expected benefits from burdens imposed under cost-sharing orders entered earlier in the litigation, or has derived those benefits to a significantly greater or lesser extent than other similarly situated parties. This rule dominates the constellation of factors bearing on the decision to reallocate.

b.

In contrast to the well-recognized presumption that prevailing parties should recover their taxable costs under Rule 54(d), there is no basis for a parallel presumption that the winners' case-management expenses should be borne by the losers. Thus, a prevailing party will not automatically receive a favorable reallocation, but must persuade the court of an entitlement to one. This conclusion flows naturally from the idea that derived benefit is the shining star in the readjustment galaxy: when all is said and done, the benefit a party secures from forced contributions to joint ventures in complex litigation may be unrelated, or vastly disproportionate, to the party's success on the merits.

c.

To say that prevailing parties are not presumptively entitled to a favorable reallocation of cost-sharing assessments is not to say that either the fact or the scope of a litigant's victory is irrelevant to a district court's reassessment of the matter. The inherent clarity of a case and the ease with which it can be decided without resort to heroic measures ordinarily affect the degree of benefit the prevailing party obtains from the availability of innovative procedural mechanisms. Hence, the extent to which a litigant achieves a swift, across-the-board success not correlated with case-management tools must necessarily inform the district court's reallocation decision. The presence of knotty issues, fought, in the Stalingrad tradition, from rock to rock and tree to tree, often cuts the other way. Close cases, particularly those that are fact-dominated, tend to be cases in which all parties derive considerable benefit from the availability of sophisticated case-management tools.

d.

We recognize that the presence of an indigent party may affect the reallocation decision. 
Cf.
, 
e.g.
, 
Neitzke
 v. 
Williams
Adkins
 v. 
, 335 U.S. 331, 339 (1948) (refusing to require litigants "to contribute to payment of costs[] the last dollar they have or can get" before becoming entitled to 
forma
 
pauperis
Aggarwal
 v. 
Ponce Sch. of Medicine
Burroughs
, 741 F.2d at 1542 (allowing a district court to deny costs under Rule 54(d) when the losing party is indigent). We do not probe the point, however, because no party involved in these appeals has asserted such a claim. 

 Although the operative considerations are not entirely the same, this principle parallels the Sixth Circuit's longstanding view that a prevailing party's ability to pay his or her own costs is an improper basis for refusing to tax costs against the loser under Rule 54(d). 
See
 

Lewis
 v. 
Pennington
, 400 F.2d 806, 819 (6th Cir.), 
cert.
 
denied
, 393 U.S. 983 (1968). 

e.

Cost-sharing orders are designed to inure to the benefit of all contributing parties. A case's history and particular circumstances may reveal that some parties carried heavy, even excessive, loads, while other parties enjoyed a relatively free ride. Reallocating cost-sharing assessments affords a way of balancing case-specific inequities. For example, a party's interjection of unmeritorious issues that unnecessarily lengthen the litigation might favor the conclusion that others have paid too much and the interjector has paid too little. 
Cf.
 
Lichter Found., Inc.
 v. 
Welch
, 269 F.2d 142, 146 (6th Cir. 1959) (approving denials of costs to prevailing parties under Rule 54(d) on this basis). A cost-readjustment analysis, like all decisions grounded in equity, must leave room for such case-specific factors.

f.

We believe that we have said enough to erect a flexible framework for reallocation analysis and, hopefully, to provide a modicum of general guidance to the district courts. We caution that the relative weight and impact of relevant considerations will vary from situation to situation, and, moreover, that, given the virtually limitless number of permutations likely to be encountered in civil litigation, our compendium of factors is not all-encompassing.

3. 
Remedy
.
 The question of remedy remains. It is clear that an appellate court is not the most propitious forum for shaking up a preexisting expense allocation. By definition, cost-sharing orders originate with the district court as a component of the court's case-management function. Given the district judge's intimate knowledge of the circumstances under which the imposts were conceived, his familiarity with the nature and purposes of the assessments, his front row seat throughout the litigation, and his matchless ability to measure the benefits and burdens of cost-sharing to the parties in light of the litigation's progress and stakes, we are convinced that the district judge has the coign of vantage best suited to determining, in the first instance, whether, and if so, how, the initial cost-sharing orders should be modified. We are keenly aware that this litigation has exhibited a capacity to chew up endless amounts of judicial resources and we are extremely reluctant to prolong matters. Here, however, the necessity for remanding is plain: not only is the trial judge best equipped to address the remaining problems, but also, as we explain below, there is at least a 
prima
 
facie
 case for some reallocation of the assessments. Indeed, the collocation of circumstances strongly suggests that the pre-fire insurers did not reap in full the benefits associated with several of the procedural innovations they helped to fund. We run the gamut.

More than half of each appellant's assessment supplemented the budgets of the JDC and JDD, facilities devoted to the economical coordination and speedy completion of discovery. Because the pre-fire insurers defeated all adverse claims through dispositive motions short of trial, on purely legal grounds, the benefit they derived from these innovations was most likely minimal. The near-complete closure of discovery prior to appellants' appearance in the litigation, 
see
 
supra
Nevertheless, thirteen appellants contend that they utilized 
no
 evidence contained in the JDD to support their dispositive motions.

The early stage at which the district court dismissed all claims against appellants also creates doubt as to whether the substantial assessments, geared largely toward efficient fact gathering, inured to appellants' benefit to any meaningful degree. The pre-fire insurers prevailed on all claims, as a matter of law, without going to trial. The district court, having determined that no issue of fact needed debate and that appellees' arguments had no basis in law, 
see
 
Hotel Fire Litig.
, 802 F. Supp. at 635, 644, might be hard-pressed to conclude that appellants' huge expenditures, diverted to facilities designed, in large part, to collect, sort, and maintain factual documents, were integral to, or even marginally connected with, the pursuit of their cause.

see
, 
e.g.
, 
Societe des Produits Nestle, S.A.
 v. 
Casa Helvetia, Inc.
V. BANKRUPTCY OF AN AFFILIATED ENTITY

This assertion need not detain us. As a general rule, section 362(a)'s automatic stay provisions apply only to the debtor in bankruptcy. 
See
 
Austin
 v. 
Unarco Indus., Inc.
, 705 F.2d 1, 4 (1st Cir.), 
cert.
 
dismissed
see
 
generally

In re Western Real Estate Fund, Inc.
, 922 F.2d 592, 600 (10th Cir. 1990), 
modified
 
on
 
other
 
grounds
, 932 F.2d 898 (10th Cir. 1991). As entities legally distinct from HoCap, 
see
 
Parkview-Gem, Inc.
 v. 
Stein
, 516 F.2d 807, 811 (8th Cir. 1975) (holding that where debtor, 
qua
In re Bank Ctr., Ltd.
, 15 B.R. 64, 65 (Bankr. W.D. Pa. 1981) (refusing to stay an action against the partner of a bankrupt partnership because a "partner is a separate entity from the partnership"), the two corporate appellees are not presumptively entitled to the protection of any automatic stay which may be extant in the HoCap bankruptcy proceeding. Since these appeals implicate no attempt to assert, enforce or recover any claim against HoCap or its property, the appeals may proceed.

See
see
 
also
 
Fragoso
 v. 
Lopez
, 
 
 F.2d 
 
, 
 
Picco
 v. 
Global Marine Drilling Co.
, 900 F.2d 846, 850 (5th Cir. 1990) ("The automatic stay of the bankruptcy court does not divest all other courts of jurisdiction to hear every claim that is in any way related to the bankruptcy proceeding.").

VI. CONCLUSION

We also hold that the district court possesses the implied power, under Fed. R. Civ. P. 26(f), to revisit the initial allocations of case-management expenses and readjust the same as equity may require. Because the lower court did not afford appellants a fair opportunity to seek such a reallocation, we remand for that purpose as well. Appellants shall file their motions to reallocate with the district court no later than thirty days from the date our mandate issues.
38:
In this connection we urge the district courts within this circuit to consider framing local rules to the effect that, henceforth, any application for reallocation of court-imposed cost-sharing expenses must be filed within thirty days of the entry of final judgment. 
Cf.
 
White
Obin
 v. 
, 651 F.2d 574, 583 (8th Cir. 1981) (recommending a rule that claims for attorneys' fees must be filed within twenty-one days after entry of judgment).

.