USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT _________________________ Nos. 95-2286 95-2287 95-2288 IN RE: THREE ADDITIONAL APPEALS ARISING OUT OF THE SAN JUAN DUPONT PLAZA HOTEL FIRE LITIGATION. _________________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Raymond L. Acosta, Senior U.S. District Judge] __________________________ _________________________ Before Selya, Cyr and Lynch, Circuit Judges. _______________ _________________________ Peter B. Ackerman, with whom W. Mark Wood and O'Melveny & __________________ ____________ ___________ Myers were on brief, for appellants California Union Ins. Co., _____ Central Nat'l Ins. Co. of Omaha, Ins. Co. of N. Am., and Pacific Employers Ins. Co. Paul K. Connolly, Jr., with whom Damian R. LaPlaca, LeBoeuf, _____________________ _________________ ________ Lamb, Greene & MacRae, L.L.P., Andrew K. Epting, Jr., G. Trenholm _____________________________ _____________________ ___________ Walker, and The Wise Law Firm were on brief, for the remaining ______ __________________ appellants. Joseph L. Golden for appellees Tertiary, Inc. et al. ________________ Theodore A. Pianko and Christie, Parker & Hale on brief for ___________________ _______________________ appellees Hotel Systems International, et al. _________________________ August 19, 1996 _________________________ SELYA, Circuit Judge. These appeals commemorate the SELYA, Circuit Judge. ______________ latest flight of the phoenix that rises repeatedly from the ashes of the tragic fire that engulfed the San Juan Dupont Plaza Hotel a decade ago. Today, we review the district court's actions following the remand that we ordered in an earlier opinion. See ___ In re Two Appeals Arising Out of the San Juan Dupont Plaza Hotel _________________________________________________________________ Fire Litig., 994 F.2d 956 (1st Cir. 1993). Finding, as we do, ___________ that the district court's determinations comport with the parameters that we set in Two Appeals and fall squarely within ___________ the realm of judicial discretion, we affirm. I. BACKGROUND I. BACKGROUND We sketch the background of these appeals, cognizant that readers who hunger for more detail can find it in a myriad of reported cases, including our earlier opinion. See, e.g., id. ___ ____ ___ at 959-60. The sprawling litigation that burst forth from the smoldering embers of the charred hotel encompassed wrongful death, personal injury, property damage, and other claims brought by more than 2,000 plaintiffs against more than 200 defendants. In an effort to tame this behemoth and to orchestrate the proceedings, the district court devised an innovative case- management system. The system included the appointment of liaison counsels (to facilitate interactions both between the court and the legion of lawyers linked to the litigation as well as among the lawyers themselves); the formation of a Joint Discovery Committee ("JDC") to coordinate discovery initiatives; 2 and the creation of a Joint Document Depository ("JDD") as a resting place for all pleadings, discovery materials, and the like. See id. at 959. To pay for this case-management system, ___ ___ the trial judge imposed mandatory assessments on all litigants. The appellants (whom we shall call "the pre-fire insurers") comprise thirteen insurance companies that had issued liability policies to firms which eventually became defendants in the underlying litigation.1 The quondam insureds settled with various claimants and then sued the pre-fire insurers for indemnification, notwithstanding that all the policies had expired prior to the conflagration. Not to be outdone, the original plaintiffs joined the pre-fire insurers as direct defendants. Though they had been brought late into the fray, the district court levied an assessment against each pre-fire insurer for a standard "defendant's share" (which, over time, amounted to roughly $41,500). Like all such assessments, these funds were slated for use in defraying the expenses associated with the case-management scheme. Fairly early in the game, the pre-fire insurers moved for summary judgment on all claims against them. After a lengthy interval, the district court granted their motions but ordered sua sponte that they bear their own costs. The court afforded ___ ______ the pre-fire insurers no opportunity to be heard. Moreover, it did not specifically mention the cost-sharing assessments.  ____________________ 1Nineteen pre-fire insurers were sued. Only fourteen appealed. One of them, Puerto Rico American Insurance Co., has since capitulated. 3 The pre-fire insurers appealed the denial of costs. In deciding those appeals, we ruled, inter alia, that a trial court _____ ____ has the power to reallocate monetary assessments imposed as part of a case-management system. See id. at 965. Because the ___ ___ district court did not give the pre-fire insurers a fair chance to seek reallocation of those costs, we remanded so that they might ask the district court to determine whether the circumstances warranted some redistribution of the payment burden. See id. at 969. The pre-fire insurers made the request, ___ ___ but, in the end, it went unrequited. See In re San Juan Dupont ___ ______________________ Plaza Hotel Fire Litig., MDL-721, Order No. 581 (D.P.R. Aug. 17, ________________________ 1995). On appeal, the pre-fire insurers contend that the district court ignored the guideposts we erected in Two Appeals ____________ for evaluating case-management cost-reallocation claims. They also contend that the lower court failed to recognize that they had established a prima facie case for reallocation. Finally, they complain that they did not receive any benefit from the case-management system, and that, therefore, the court improperly refused to relieve them from the standardized assessments.2  ____________________ 2In a reply brief, certain of the pre-fire insurers complain that they have not been given access to the depository accounts to determine how funds were spent, or how much, if any, money remains on hand. They develop no legal argument out of this complaint, and it is beyond peradventure that we will not address an issue when the party raising it fails to treat it seriously. See, e.g., United States v. Zannino, 895 F.2d 1, 17 (1st Cir.) ___ ____ _____________ _______ (describing the "settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"), cert. denied, 494 _____ ______ U.S. 1082 (1990). 4 II. DISCUSSION II. DISCUSSION Because the district court has spelled out an acceptable basis for its cost-sharing orders and for its refusal to grant a special dispensation to the pre-fire insurers, we affirm principally on the strength of its rescript, adding only a few amplificative comments. First: The pre-fire insurers have incorrectly First: _____ identified the legal standard applicable to appellate review of Order No. 581. They insist that plenary review is appropriate here because the trial judge ignored and/or mishandled the general guides for evaluating cost-reallocation claims that we limned in Two Appeals, thereby committing an error of law. This ___________ argument elevates form over substance. In Two Appeals we delineated several factors that might ___________ be considered in mulling whether to reallocate court-ordered case-management expenses. See 994 F.2d at 966-68. Although we ___ hoped that these suggestions would provide "a modicum of general guidance to the district courts," id. at 967, we made it very ___ clear that the trier's judgment is inevitably a critical element in determining which factors have relevance in a particular case, what other factors may be pertinent, and what weights to assign to various factors. In that connection we wrote: By definition, cost-sharing orders originate with the district court as a component of the court's case-management function. Given the district judge's intimate knowledge of the circumstances under which the imposts were conceived, his familiarity with the nature and purposes of the assessments, his front row seat throughout the litigation, and his 5 matchless ability to measure the benefits and burdens of cost-sharing to the parties in light of the litigation's progress and stakes, we are convinced that the district judge has the coign of vantage best suited to determining, in the first instance, whether, and if so, how, the initial cost-sharing orders should be modified. Id. at 968. ___ This issue is fact-sensitive, and even a cursory reading of the record reveals that the district court stayed well within the broad contours of the inquiry that we had suggested. Stripped of rhetorical flourishes, the pre-fire insurers' real complaint is not that the judge misunderstood the relevant factors but that he weighed them haphazardly. Emblematic of this focus is the undeniable fact that, at bottom, the appellants challenge the court's factbound conclusion that the pre-fire insurers actually benefitted from the elaborate network of case- management devices (like the JDD) that their payments helped to subsidize. So viewed, these appeals raise fact-sensitive disputes that invite discretionary judgments. In circumstances where, as here, a matter is committed to the trial judge's equitable discretion, see id. at 965, deference is due. See, ___ ___ ___ e.g., Koon v. United States, 64 U.S.L.W. 4512, 4517 (U.S. June ____ ____ _____________ 13, 1996). That ends the standard-of-review contretemps. Here, as in Koon, the pre-fire insurers merely seek to recharacterize a ____ factbound dispute on "a higher level of generality." Id. An ___ appellate court therefore ought to limit its review to a search for abuse of the trial court's discretion. See id.; see also ___ ___ ___ ____ 6 Texaco P.R., Inc. v. Department of Consumer Affairs, 60 F.3d 867, _________________ ______________________________ 875 (1st Cir. 1995) (reviewing a trial court's choice among equitable remedies for abuse of discretion because "the trial judge, `who has had first-hand exposure to the litigants and the evidence, is in a considerably better position to bring the scales into balance than an appellate tribunal'") (quoting Rosario-Torres v. Hernandez-Colon, 889 F.2d 314, 323 (1st Cir. ______________ _______________ 1989) (en banc)). And the pre-fire insurers' attempt to transform what are essentially factual findings into legal conclusions by the alchemy of words is insufficient to alter this standard of review. Since appellate courts "will not permit parties to profit by dressing factual disputes in `legal' costumery," Reliance Steel Prods., Inc. v. National Fire Ins. ____________________________ ___________________ Co., 880 F.2d 575, 577 (1st Cir. 1989), abuse of discretion ___ remains the appropriate benchmark against which the district court's ruling must be measured. Second: The pre-fire insurers misconstrue our comment Second: ______ that they had previously established "at least a prima facie case _____ _____ for some reallocation of the assessments." Two Appeals, 994 F.2d ___________ at 968. They interpret this language as signifying that on remand the appellees had a burden to proffer evidence sufficient to rebut this prima facie case, and that the district court should have responded in terms both to the prima facie case and to the lack of any formal rebuttal. This self-serving reading of Two Appeals injects more into the quoted comment than the context ___________ will bear. 7 In Two Appeals, we remanded the question of ____________ reallocation because the district court had not given the pre- fire insurers the opportunity to argue their position. See id. ___ ___ at 969. We did not use the phrase "prima facie case" as a talisman indicating that the pre-fire insurers had proved a point, but, rather, as a means of describing the arguments that _________ they had tendered in support of reallocation. Id. at 968. This ___ usage was intended merely to demonstrate that a remand was advisable because, on the exiguous record then before us, the pre-fire insurers had offered enough of an argument to warrant the district court's consideration of their claim. We had at hand neither a precise knowledge of the facts nor a valid means of testing the integrity of the pre-fire insurers' asseverations. Thus, we could say no more than that "it appears from the record _______________ before us that appellants have a colorable basis for arguing that _________ _________ _____ they derived minimal benefits from the assessments." Id. ___ (emphasis supplied). And, in words that should have erased any doubt, we added: Nonetheless, this hypothesis remains _______ unproven. There may be more here than meets ________ the eye; for one thing, the appellate record does not speak in any detail to the equities. . . . [T]here are pregnant questions to be mulled on remand questions on which the trial judge's viewpoint is especially important. We conclude, therefore, that the case must be returned to the district court for further proceedings before Judge Acosta. We intimate no opinion as to the appropriate _____________________________________________ outcome of these proceedings. ____________________________ Id. at 968-69 (emphasis supplied). Judge Acosta, therefore, had ___ authority to exercise discretion in both marshalling and 8 balancing the relevant factors. He was not compelled to attach any special significance to the largely theoretical "prima facie case" language that the pre-fire insurers pluck out of context from our earlier opinion. Third: The district court's finding that the pre-fire Third: _____ insurers did in fact receive a significant benefit from the existence of the case-management system withstands review under an abuse-of-discretion test. The pre-fire insurers assert that they received no benefit from the devices because (1) discovery already had been completed at the time they were brought into the case, (2) they were perfectly capable of doing for themselves what the JDD accomplished for them, and (3) they did not need to rely on the material in the JDD since they sought (and were granted) summary judgment as a matter of law on the claims lodged against them.3 We agree with the district court, see Order No. ___ 581, supra, at 9, that these assertions stem from an overly _____ simplistic view of the pre-fire insurers' situation. For one thing, Judge Acosta specifically found that the timing of discovery did not warrant a reduction of charges to the pre-fire insurers. See id. at 10. We think that this finding, ___ ___ though perhaps not inevitable, is supportable. The fact that discovery had been concluded was a two-edged sword. While it  ____________________ 3The pre-fire insurers concentrate their fire on the JDD because, in their view, nothing else mattered. This is a myopic outlook. The case-management system functioned as an integrated whole. The JDC played a pivotal role in producing the information stored in the JDD, and the liaison consuls saved all parties time and money at every stage of the farflung litigation. 9 meant that the pre-fire insurers did not have to use the JDD to keep track of ongoing discovery, it also meant that they "had available to them in a single location all pleadings, discovery, service lists, pretrial documents, records of all court proceedings, trial transcripts, evidence utilized at trials, memoranda, as well as docket reference[s] as to all that had transpired up to that time." Id. at 8. ___ For another thing, it is of no moment that the pre-fire insurers might have preferred to go it alone. The case- management system that the district court so painstakingly devised could not have operated on a voluntary basis. It depended on the court's authority to order all parties both to participate and to share the associated costs. Since the court acted within the scope of its case-management powers in establishing the overall paradigm, see Two Appeals, 994 F.2d at ___ ___________ 965; In re Recticel Foam Corp., 859 F.2d 1000, 1004 (1st Cir. ___________________________ 1988), we give short shrift to the notion that the pre-fire insurers would have been better off conducting their defense in more traditional surroundings. Finally, the district court found specially that the materials in the JDD were of significant benefit to the pre-fire insurers. See Order No. 581, supra, at 8-9. This finding is ___ _____ also supportable. After all, the allegations against the pre- fire insurers developed during, and arose from the results of, the discovery process. Thus, materials in the JDD had to be searched, and some were directly relevant to the claims asserted 10 and/or to the pre-fire insurers' defenses. As the district court put it, "upon being served with [a] copy of the claims asserted against them two or three years after the initial complaint [in the underlying litigation] had been filed [the pre-fire insurers] could, through the availability of a well-organized and efficient Joint Document Depository, ascertain the status of the proceedings and have readily available all documentation pertinent to their case." Id. at 9. ___ The proof of the pudding is in the pre-fire insurers' admission that their confidence knew certain limits. Faced with upward of $200,000,000 in claims, the pre-fire insurers undertook full-scale trial preparations notwithstanding the pendency of their dispositive motions. The preparations envisioned reopening discovery, and as a necessary prelude (under the terms of the applicable pretrial orders) entailed heavy use of the JDD, resulting, for example, in making copies of over 275,000 documents and ordering in excess of 110 computer disks that contained stored information. In light of these statistics, the "no benefit" claim rings hollow.  The pre-fire insurers attempt to downplay the district court's finding and the statistics that support it on the basis that they eventually succeeded in obtaining judgment as a matter of law. In their view, this outcome signifies that they had little need to rely on the JDD. In an allied vein, they note that they did not refer to any documents contained in the JDD in their summary judgment motions. We believe that these rejoinders 11 miss the point. Although the pre-fire insurers ultimately proved themselves able to defeat the claims without relying on discovery materials, simple prudence required them carefully to check those materials (if for no other reason than to guard against the possible denial of their Rule 56 motions), and it was to their advantage that the materials were pre-assembled, catalogued, cross-indexed, and readily accessible. In a similar vein, the compilation of those materials necessarily assisted in the processing of their motions. Furthermore, as the district court explained, previous litigation of other issues earlier in the trial (including extensive discovery) had framed the issues, thereby enabling the court to resolve the claims against the pre-fire insurers with relative ease. The pre-fire insurers (who have the burden to prove they are entitled to reallocation) offer no convincing answer to this observation in their appellate briefs, but, rather, ask us to accept on faith their assumption that the district court did not rely on its knowledge of the litigation, gleaned in large part through the case-management system, to rule in their favor. We are unwilling to buy so large a pig in so recondite a poke. Fourth: The pre-fire insurers refuse to recognize Fourth: ______ the extent to which the size and complexity of the underlying litigation affected the district court's evaluation of the relative benefits and burdens imposed by the case-management system. In our judgment, it is this blind spot that explains 12 their contention that the district court failed adequately to compare relative costs and benefits between and among the parties. To be sure, we stated in Two Appeals that the principle ___________ which "dominates the constellation of factors bearing on the decision to reallocate" is that a district court should consider reallocating case-management assessments if and when "it determines that a party or group of parties has significantly failed to derive the expected benefits from burdens imposed under cost-sharing orders entered earlier in the litigation, or has derived those benefits to a significantly greater or lesser extent than other similarly situated parties." Two Appeals, 994 ____________ F.2d at 966. But at the same time we emphasized that "the relative weight and impact of relevant considerations will vary from situation to situation." Id. at 967. Even though ___ comparative benefits are always a salient aspect of the reallocation calculus, see id. at 966, district courts cannot be ___ ___ expected to measure benefits and burdens with the precision of a micrometer in an antiseptic laboratory setting. This vastly complicated case (or, more accurately put, compendium of cases) which involves upwards of 2,000 plaintiffs whose claims have run the gamut of imaginable and unimaginable theories of liability illustrates the need for a flexible standard. In such circumstances, it is simply not practicable to contrive a clean matrix of benefits and burdens. The best that a trial court can do is to determine, as a matter of rough remedial 13 justice, whether significant disparities in the distribution of benefits and burdens demand readjustment of a generic formula. See id. at 966. This is precisely the approach that the district ___ ___ court took on remand. III. CONCLUSION III. CONCLUSION We need go no further.4 Based on its experience with this convoluted case, its familiarity with the evidence, its knowledge of the issues, and its awareness of the parties' strategies, the trial court is in the best position to make delicate case-management judgments, including judgments about the reallocation of expenses previously assessed. Here, the trial court determined that each pre-fire insurer should bear a full "defendant's share" of case-management expenses. Because the district court's refusal to reallocate the expense shares does not constitute a serious lapse in judgment of the kind that must occur before we will reverse under an abuse- of-discretion standard, see Texaco P.R., 60 F.3d at 875; Anderson ___ ___________ ________ v. Cryovac, Inc., 862 F.2d 910, 923 (1st Cir. 1988), we are not _____________ at liberty to second-guess it. Though we, if writing on a pristine page, might have balanced some of the factors  ____________________ 4The pre-fire insurers harp on what they term the "frivolousness" of the claims against them. While the strength or weakness of the claims is one of many factors that may influence the outcome of a quest for reallocation, see Two ___ ___ Appeals, 994 F.2d at 967, that factor does not carry the _______ decretory significance that the pre-fire insurers attach to it. Reallocating cost-sharing assessments is a matter of equity; it is not a substitute for, and should not be confused with, an award of sanctions for filing groundless claims under Fed. R. Civ. P. 11. 14 differently or taken a divergent view of the importance of the systemic benefits received by the pre-fire insurers, we made clear in Two Appeals that the call is not ours to make. ___________ Affirmed. Affirmed. ________ 15