Talbot v. Healthsource, Inc.            CV-96-406-SD  02/26/97

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


Diane Talbot


    v.                              Civil No. 96-406-SD


Healthsource, Inc.



O R D E R


    This action arises out of defendant's refusal to pay benefits due plaintiff under an HMO group subscriber contract for insurance.  The complaint, which contains only state law claims, was originally filed in state court.  Defendant removed the action on the ground that the state law causes of action were preempted by the Employment Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, et seq. (1985 & Supp. 1996).

    Presently before the court is defendant's motion to dismiss, brought pursuant to Rules 12(b)(1) and (6), Fed. R. Civ. P., and plaintiff's objection thereto.  In brief, at issue is whether plaintiff's state law causes of action are preempted by ERISA and, if so, whether plaintiff failed to exhaust her administrative remedies before filing the complaint.

<u>Background</u>[1]

Plaintiff Diane Talbot suffers from a medical condition known as Reflex Sympathetic Disorder (RSD), requiring that she have repeated care and treatment for her left knee. A resident of Manchester, New Hampshire, she has received care from several physicians in New Hampshire and is insured by defendant Healthsource, a New Hampshire corporation.

In March of 1995, at the recommendation of her Healthsource primary care physician, Dr. Andrew Perron, Talbot began treatment at the Massachusetts General Hospital (Mass General) in Boston, Massachusetts. The treatment was approved by Healthsource because the therapy she received was not readily available in community institutions. In June, Dr. Stojanovich, plaintiff's treating physician at Mass General, recommended that plaintiff undergo an epidural catheter placement and infusion with physician therapy for seven to ten days. Although Dr. Perron approved this treatment, Healthsourch denied coverage without following the procedures and guidelines within Regulation 1000, New Hampshire Code of Administrative Rules and New Hampshire Revised Statutes Annotated (RSA) 417.

Following the denial, plaintiff filed a grievance with

_____

[1]The background section is taken from the allegations in the complaint.

Healthsource. The grievance committee agreed to cover all of the charges plaintiff incurred at Mass General from July 18, 1995, through July 27, 1995, minus the applicable member co-payment. Healthsource also agreed that any future services at Mass General or Spaulding Rehabilitation Hospital (also located in Boston) would require both primary care physician authorization and prior plan approval to insure coverage.

In early 1996, Dr. Perron recommended, and Healthsource approved, treatment at Mass General and Spaulding. However, since early March 1995, Healthsource has repeatedly delayed payment to both hospitals. In addition, in early 1996 Dr. Perron and plaintiff's treating physician recommended a 30-day in-hospital treatment program at the Spaulding Rehabilitation Center, as well as a sleep EEG. Although these treatments are covered under the Healthsource Group Subscriber Agreement, the Healthsource Claims Review Committee denied plaintiff's request for coverage.

Discussion

1. Does ERISA Preempt Plaintiff's State Law Claims?

The rules governing whether ERISA preempts state law claims in a particular case have been well developed, see, e.g., Boston Children's Heart Foundation, Inc. v. Nadal-Girard, 73 F.3d 429,

3

438-40 (1st Cir. 1996), and thus need not be recited here in great detail.  Suffice it to say that ERISA preempts any state laws insofar as they "relate to" an employee benefit plan.  See 29 U.S.C. § 1144(a).  Preemption is to be liberally found, "even if the [state law] is not specifically designed to affect such plans, or the effect is only indirect."  Boston Children's, supra, 73 F.3d at 439 (quotation omitted).  The determination of whether the state law "relates to" an ERISA plan, or is merely peripheral to such plan, is fact bound, requiring an inquiry into the facts of a particular case.  Id. at 440.

Review of the complaint reveals that all of Talbot's state law causes of action "relate to" Healthsource's administration of the Group Subscriber Agreement, which the parties appear to agree is an ERISA plan.  The court thus finds and rules that ERISA preempts plaintiff's state law claims.

2.  Did Plaintiff Exhaust Her Administrative Remedies?

Having found that plaintiff's claims are preempted by ERISA, the court now turns to whether plaintiff has complied with the requirement therein concerning the exhaustion of administrative remedies.  ERISA requires that a person challenging the adminis-tration of an ERISA health benefit plan normally must first exhaust available administrative remedies before filing a case in

4

federal court.  See 29 U.S.C. § 1133(2).  Although the require-
ment applies only to breach of contract claims, and not to
"statutory rights" under ERISA, contract claims "artfully dressed
in statutory clothing" are still subject to the exhaustion
requirement.  See Drinkwater v. Metropolitan Life Ins. Co., 846
F.2d 821, 825-26 (1st Cir.), cert. denied, 488 US. 909 (1988).

Courts do recognize certain exceptions to the exhaustion
requirement, even when the claim involves a breach of a Plan
contract.  A plaintiff can bypass the exhaustion requirement by
showing that following the available grievance procedure would be
futile or that the offered remedy is inadequate.  See id. at 826.
Talbot invokes this exception, arguing that she should be granted
leave to replead her complaint to include that Healthsource
repeatedly refused to inform her which of her claims for benefits
and services had been honored, which had been denied, and why.

In Wilczynski v. Lumbermens Mut. Casualty Co., 93 F.3d 397,
402 (7th Cir. 1996), the court emphasizes the importance of the
requirement that a benefit plan provide claimants with access to
the evidence relied upon by the decisionmakers in deciding their
claims.  Without proper notice of the decisions and reasoning of
the Plan, claimants are unlikely to be properly equipped to
pursue a remedy through administrative channels.  See id. at 402
& n.3.  A "full and fair" review may be denied them, and their

ability to prepare for further review or eventual resort to the federal courts may be compromised.  Id.

This court agrees with the reasoning in Wilczynski, and thus finds and rules that plaintiff's allegations of being denied access to the subject information would suffice to support that the administrative remedy offered by Healthsource is inadequate.[2] At this early stage of the proceedings, the court is unable to conclude that the proposed amendments to the complaint are insufficient to show that resort to administrative remedies would have been "futile" or that the offered remedy was "inadequate."

Conclusion

For the above-stated reasons, the court grants in part and denies in part defendant's motion to dismiss (document 8).  The court finds and rules that plaintiff's state law claims are pre

_____

2 The court notes that Wilczynski involved a slightly different standard than the one adopted so far in the First Circuit.  In the Seventh Circuit, exhaustion is excused when a claimant lacks "meaningful access to the review procedures" and when exhaustion would be futile.  Wilczynski, supra, 93 F.3d at 402.  Nonetheless, the court finds that the reasoning behind the "meaningful access" standard can be equally applicable to the First Circuit's inadequacy-of-remedy standard.

6

empted by ERISA, but grants plaintiff leave to amend her complaint to state a claim under ERISA.

    SO ORDERED.


_____
Shane Devine, Senior Judge
United States District Court

February 26, 1997
cc:   D. Michael Noonan, Esq.
      Christopher Cole, Esq.