Chandler v. John Alden Life Ins.      CV-03-521-JD  01/26/05
                    UNITED STATES DISTRICT COURT FOR THE
                          DISTRICT OF NEW HAMPSHIRE


Nancy Chandler

        v.                                  Civil No. 03-521-JD
                                            Opinion No. 2005 DNH 013
John Alden Life
Insurance Company and
Fortis Insurance Company


                              O R D E R


     Plaintiff Nancy Chandler and the defendants, John Alden Life

Insurance Company and Fortis Insurance Company, have cross-moved

for summary judgment on Chandler's claim for a declaration that

the insurance policy issued to her husband by John Alden provides

coverage for her breast cancer treatment.  Each side has filed an

objection to the other's motion.


                             Background

     Chandler is a beneficiary under a "short-term medical

policy" issued to her husband by John Alden.[1]  The policy

provides coverage only for expenses "incurred as a result of

Sickness or Injury," defining "Sickness" as "[a]n illness,

disease or condition which first manifests itself while this

policy is in force."  In addition, the policy excludes from its

---

[1]Fortis administers claims on John Alden's behalf.

coverage any "Pre-existing Condition," defined as

> A Sickness, Injury, disease, or physical condition:
>
> 1. for which the covered person received medical treatment or advice from a Physician within the 2 year period immediately preceding the Effective Date of Coverage; or
>
> 2. which produced signs or symptoms within the 2 year period immediately preceding the Effective Date of Coverage.

In connection with the second part of this definition, the policy states that "[t]he signs or symptoms must have been significant enough to establish manifestation or onset by one of the following tests: (a) [t]he signs or symptoms would have allowed one learned in medicine to make a diagnosis of the disorder; or (b) [t]he signs or symptoms should have caused an ordinarily prudent person to seek diagnosis or treatment."

The policy's "Effective Date of Coverage" was February 11, 2003. One week earlier, on February 4, 2003, Chandler underwent a screening bilateral mammogram as part of her annual physical. The final report of the mammogram states, in relevant part:

> This is an indeterminate (ACR category 0) mammogram of the Right breast. There is an area of possible architectural distortion in the upper central area of the Right breast, requiring additional imaging.

The report concluded that the "assessment [was] incomplete" and recommended additional imaging of the right breast, to occur on February 14, 2003. Following additional views and an ultrasound

of the breast on that date, the treating physician, Dr. Therese Vaccaro, noted that "the findings on both mammography and ultrasound are worrisome for malignancy" and formed the impression that the right breast was highly suggestive of malignancy. A biopsy, performed on February 18, 2003, resulted in a diagnosis of invasive carcinoma. At her physician's suggestion, Chandler underwent a lumpectomy on March 18, 2003, and received subsequent treatment for her cancer.

Chandler submitted claims for the costs of her treatment to the defendants, who took the position that it was not a "Covered Expense" or, alternatively, that Chandler's breast cancer was a "Pre-existing Condition" under the policy. Chandler responded by bringing a petition for declaratory judgment against the defendants in Grafton County Superior Court, seeking a declaration of her rights under the policy "consistent with coverage for all medical treatments during the policy less applicable deductible and co-payment amounts," together with attorneys' fees and costs.[2] The defendants duly removed the action to this court, invoking its diversity jurisdiction.

[2]The petition alleges that "[i]mmediately prior to the issuance" of the short-term medical insurance policy on February 10, 2003, Chandler was covered "under a policy substantially similar . . . which expired on February 6, 2003." Neither the petition nor Chandler's motion for summary judgment, however, asserts any claim based on this earlier policy. See Mem. Supp. Cross-Mot. Summ. Judg. at [2].

3

## Standard of Review

On a motion for summary judgment, the moving party has the burden of showing the absence of any genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant does so, the court must then determine whether the non-moving party has demonstrated a triable issue.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  In ruling on a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor.  E.g., J.G.M.C.J. Corp. v. Sears, Roebuck & Co., 391 F.3d 364, 368 (1st Cir. 2004); Poulis-Minott v. Smith, 388 F.3d 354, 361 (1st Cir. 2004). Cross-motions for summary judgment ask the court "'to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed.'"  Barnes v. Fleet Nat'l Bank, 370 F.3d 164, 170 (1st Cir. 2004) (quoting Wightman v. Springfield Terminal Ry., 100 F.3d 228, 230 (1st Cir. 1996)).

## Discussion

The defendants seek summary judgment on the ground that the cancer constitutes a "Pre-existing Condition" within the meaning of the policy because it "produced signs or symptoms" during its exclusion period, namely the "area of possible architectural

4

distortion" detected in the mammogram of February 4, 2003. The defendants argue that these "signs and symptoms" either "would have allowed one learned in medicine to make a diagnosis of the disorder" or "should have caused an ordinarily prudent person to seek diagnosis or treatment."

The parties appear to agree on the application of New Hampshire law to this case. The interpretation of insurance policy language presents a legal question to be decided by the court. E.g., EnergyNorth Natural Gas, Inc. v. Underwriters at Lloyd's, 150 N.H. 828, 833 (2004). In performing this task, the court must "take the plain and ordinary meaning of the policy's words in context, and . . . construe the terms of the policy as would a reasonable person in the position of the insured based upon more than a casual reading of the policy as a whole." Preferred Nat'l Ins. Co. v. Docusearch, Inc., 149 N.H. 759, 763 (2003); see also, e.g., Contoocook Valley Sch. Dist. v. Graphic Arts Mut. Ins. Co., 147 N.H. 392, 393 (2001).

"Absent a statutory provision or public policy to the contrary," neither of which Chandler suggests here, "an insurance company is free to limit its liability through an exclusion written in clear and unambiguous policy language." Trombley v. Liberty Mut. Ins. Co., 148 N.H. 748, 751 (2002) (citing Wegner v. Prudential Prop. & Cas. Ins. Co., 148 N.H. 107, 109 (2002)).

5

Chandler argues that "the pre-existing condition language of [the] policy is ambiguous and [therefore] must be construed in favor of [coverage]." See, e.g., M. Mooney Corp. v. United States Fid. & Guar. Co., 136 N.H. 463, 470-71 (1992). Rather than explaining how "reasonable disagreement between the contracting parties is possible" as to the language, however, id. (internal quotation marks omitted), Chandler relies on cases applying the law of other jurisdictions which have found ambiguity in particular pre-existing condition exclusions. The defendants counter that the exclusion at issue in each of those cases applied only to a condition "for which" the insured received treatment during the relevant period.

For example, the policy considered in Hughes v. Boston Mut. Life Ins. Co., 26 F.3d 264 (1st Cir. 1994), defined pre-existing condition as "a sickness or injury for which the insured received treatment within 6 months prior to the insured's effective date." Id. at 266 (brackets omitted). The First Circuit found this provision ambiguous because it did not

> explain what constitutes treatment 'for' a particular condition. [The insurer] suggests that treatment 'for' a condition refers to treatment of any symptom which in hindsight appears to be a manifestation of the condition. We acknowledge that this would be one reasonable interpretation of the exclusion. But . . . [the insured] reasonably suggests that the exclusion requires some awareness on the part of the physician or the insured that the insured is receiving treatment for the condition itself.

6

Id. at 269 (internal citations omitted).  With one exception, discussed infra, the other cases Chandler cites found similar exclusionary language ambiguous or inapplicable based on similar reasoning.  See Lawson ex rel. Lawson v. Fortis Ins. Co., 301 F.3d 159, 161 & 165 (3d Cir. 2002) (finding exclusion of "condition for which medical advice or treatment was recommended . . . or received" ambiguous because "it is hard to see how a doctor can provide treatment 'for' a condition without knowing what that condition is or that it even exists"); Pitcher v. Principal Mut. Life Ins. Co., 93 F.3d 407, 409-417 (7th Cir. 1996) (refusing to apply exclusion of condition "for which [an insured] . . . received treatment or service" to insured's breast cancer where "she did not receive 'treatment or service' for breast cancer" but for unrelated breast condition); Ross v. W. Fid. Ins. Co., 872 F.2d 665, 668-69 (5th Cir.), as amended by 881 F.2d 142, 144 (5th Cir. 1989) (acknowledging ambiguity in exclusion of "condition for which medical advice or treatment was recommended by or received from a physician" because "treatment for a specific condition cannot be received unless the specific condition is known"); Van Volkenburg v. Cont. Cas. Ins. Co., 971 F. Supp. 117, 122-23 (W.D.N.Y. 1997); Mannino v. Agway Inc. Group Trust, 600 N.Y.S.2d 723, 725-26 (N.Y. App. Div. 1993).

Although the defendants recognize that the first clause of

7

their exclusion contains similar language, they disclaim any reliance on that provision in their motion for summary judgment. Instead, the defendants invoke the policy's alternative definition of pre-existing condition, i.e., one "which produced signs or symptoms within the 2 year period immediately preceding the effective date of coverage." Chandler does not explain how this language is ambiguous.[3] Accordingly, insofar as the policy defines pre-existing condition with reference to the language on which the defendants rely, the exclusion is clear and unambiguous as a matter of New Hampshire law. See EnergyNorth, 150 N.H. at 832 (admonishing that New Hampshire courts "will not create an ambiguity simply to construe the policy against the insurer").

Chandler also argues that the possible architectural distortion revealed during her February 4, 2003, mammogram did not constitute "signs or symptoms" of cancer within the meaning

---

[3]Although Chandler states that "[t]he term 'signs or symptoms' is defined nowhere in the policy," this characterization ignores the fact that the policy expressly limits the term's scope to those signs or symptoms that "would have allowed one learned in medicine to make a diagnosis of the disorder" or "should have caused an ordinarily prudent person to seek diagnosis or treatment." Chandler also invokes a dictionary's definitions of "sign" and "symptom" for the proposition that "any 'pre-existing condition' must be based on an agreed sign or symptom of a Sickness which predates the Policy Period" (emphasis added). In the court's view, that proposition follows neither from the quoted definitions nor, as discussed infra, the more specific language of the policy.

8

of the policy.[4]  In support of this contention, Chandler relies on an affidavit from her physician, Vaccaro, who states that

> The 'possible' architectural distortion . . . is not definitive evidence of a tumor . . . . [I]n the case of Ms. Chandler's screening mammogram of February 4, 2003, architectural distortion was only questioned, and a 'tumor' . . . was not visible.  In the clinical practice of mammography, questionable or 'possible' architectural distortion often represents a superimposition of normal breast structures rather than a definitive abnormality.

Vaccaro Aff. ¶ 10.  Vaccaro opines that the February 4, 2003, mammogram did not show evidence of a tumor, but "demonstrated a questionable area that needed additional imaging, specialized views, and a breast ultrasound."  Id. ¶¶ 11-12.

Chandler therefore argues that the possible architectural distortion would not have "allowed one learned in medicine to make a diagnosis of the disorder," i.e., cancer, so as to fit the distortion within the policy's definition of "signs or symptoms." Even if this argument is correct, however, it does not undercut the defendants' alternative theory that the distortion "should have caused an ordinarily prudent person to seek diagnosis or treatment."  There is no dispute that a possible architectural distortion meets this test.  Consistent with her affidavit, Vaccaro testified that an architectural distortion, which can

---

[4]Chandler does not attribute any significance to the fact that the policy uses the plural, rather than the singular, form of "sign" and "symptom."

9

indicate cancer, should always be further evaluated. Vaccaro Dep. at 9-11; see also Vaccaro Aff. ¶ 12. Chandler did in fact "seek diagnosis" in the form of additional mammography and an ultrasound. Finally, Vaccaro testified that the cancer, rather than any unrelated condition, actually "produced" the distortion. Cf. Pitcher, 93 F.3d at 412-413. The possible architectural distortion observed on February 4, 2003, was therefore a "sign or symptom" of cancer within the meaning of the policy, rendering the cancer a pre-existing condition excluded from the scope of its coverage.[5]

Chandler asserts that because the February 4, 2003, mammogram did not permit any diagnosis, "any argument . . . about whether [she] should 'seek diagnosis and treatment' is irrelevant." This argument ignores the fact that the policy actually uses the disjunctive phrase "diagnosis or treatment," rather than the conjunctive phrase "diagnosis and treatment." If the policy in fact required that any signs of a pre-existing condition counsel both diagnosis and treatment by an objective insured to trigger the exclusion, Chandler might have a point, because a mere indicator of a potential problem cannot itself

_____

[5]The court therefore need not reach the defendants' alternative argument that the cancer did not qualify as "Sickness" within the scope of the policy because it did not "first manifest itself" while the policy was in force.

10

need "treatment."  As Chandler points out, treatment for a condition ordinarily cannot precede its diagnosis.

But the policy does not exclude only pre-existing conditions which produced signs or symptoms that should have led the insured to seek treatment.  It also excludes those which produced signs or symptoms that should have led the insured to seek diagnosis. As the First Circuit has observed in construing similar language, Chandler's policy

> does not require that the insured seek a particular kind of diagnosis--indeed, common sense tells us that one seeks a diagnosis precisely because one is uncertain of the cause of particular symptoms.  It merely requires that the symptoms be such that an ordinarily prudent person would seek diagnosis or treatment.

Golden Rule Ins. Co. v. Atallah, 45 F.3d 512, 518 (1st Cir. 1995) (applying Maine law).  Thus, whether or not the possible architectural distortion would have justified a diagnosis of and treatment for cancer in its own right, it was a sign of the disease that called for further diagnosis.  That fact is enough to bring the cancer within the pre-existing condition exclusion.

That fact also distinguishes this case from Estate of Ermenc ex rel. Ermenc v. Am. Family Mut. Ins. Co., 585 N.W.2d 679 (Wis. Ct. App. 1998), on which Chandler relies.  There, the policy also defined pre-existing condition as one which "produced signs or symptoms . . . which should have caused an ordinarily prudent

11

person to seek diagnosis or treatment." <u>Id.</u> at 681.  In May 1996, during the exclusionary period, the insured had twice sought medical care for abdominal pain, which was diagnosed and treated as an ulcer.  <u>Id.</u> at 680.  After the policy took effect, however, the insured was admitted to the hospital with continued pain, initiating tests that revealed stomach cancer in June 1996. <u>Id.</u>  The Wisconsin Court of Appeals reversed the entry of summary judgment for the insurer on the ground that the pre-existing condition exclusion applied to the stomach cancer, reasoning that

> [t]he most that can be said about the May symptoms is that they are not inconsistent with the June diagnosis of cancer.  The doctors [the insured] saw in May did not even hint at a diagnosis of cancer, or even note that they suspected it.  They therefore did not advise or treat [the insured] for cancer before the effective date of the policy.

<u>Id.</u> at 681-82.  The appeals court therefore remanded the case for further proceedings on the insured's claims, instructing that "to avoid liability, the insurer must prove that the claimant was treated for the same condition before and after the policy took effect."  <u>Id.</u> at 682.

As an initial matter, the court in <u>Ermenc</u> appears to have overlooked the fact that the policy there, like the policy here, did not require the signs or symptoms of the pre-existing condition to counsel actual treatment, but only diagnosis.  <u>See</u> <u>Golden Rule</u>, 45 F.3d at 517 ("On its face, however, the clause

12

does not require either a correct diagnosis of the underlying illness or any awareness on the part of the insured or her physician of the nature of the underlying illness.") Furthermore, unlike Ermenc, Chandler did not receive a diagnosis of and treatment for a malady wholly different from the pre-existing condition based on symptoms that appeared before the policy period. Instead, the detection of the possible architectural distortion required further diagnosis precisely because it might have indicated what it turned out to be. Thus, unlike Ermenc, Chandler did receive medical "advice" on the pre-existing condition during the policy period in the sense that her physician recommended additional imaging of the distortion to explore the possibility of cancer. See Vaccaro Dep. at 19. Ermenc therefore provides limited, if any, guidance here, where the undisputed facts show that the cancer produced a sign causing an ordinarily prudent person to seek diagnosis before the effective date of the policy.

<u>Conclusion</u>

For the foregoing reasons, the defendants' motion for summary judgment (document no. 11) is GRANTED. Chandler's cross-

13

motion for summary judgment (document no. 13) is DENIED.  The

clerk shall enter judgment accordingly and close the case.

    SO ORDERED.


_____
Joseph A. DiClerico, Jr.
United States District Judge

January 26, 2005

cc:  James R. Laffan, Esquire
     William D. Pandolph, Esquire